## MICHAEL HIGGINS *vs.* BRIDGET HIGGINS.

Suffolk.   January 12, 1905. — May 18, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Negligence*, Employer's liability, Proximate cause.

If roofers using an extension ladder, supplied by their employer, which has a defective fastening at the junction of the two parts when extended, the two parts having become separated by reason of this defect, fasten them together in their own way with a rope found on the premises which is old and unfit for use, no superintendent being present at the time, and if another roofer who has not taken part in the fastening goes up this ladder and when called by a fellow workman to come down proceeds to do so and is thrown to the ground by the ladder giving way from the breaking of the unsound rope, the injured workman cannot recover from his employer for his injuries thus caused, the direct cause of the accident being not the original defect in the ladder but the negligence of his fellow workmen in failing to fasten the two parts of the ladder together securely by a sound rope.

BRALEY, J.    This is an action of tort to recover for personal injuries received while in the defendant's employment.   In the Superior Court at the close of the plaintiff's evidence a verdict for the defendant was ordered and returned, and the plaintiff brings the case to this court on exceptions to the ruling.

The declaration consists of five counts, one alleging negligence at common law for failure to provide safe and proper appliances; three under St. 1887, c. 270, § 1, either for defective ways, works or machinery, or negligence of the defendant's superintendent, or of an acting superintendent, or of some person intrusted with and exercising superintendence, while the fifth independently of any liability growing out of the relation of master and servant seeks to hold the defendant for an alleged breach of duty to him as a mere licensee.

It appeared from the evidence that the defendant was engaged in the general business of repairing roofs of buildings, and among other appliances used for this purpose was an extension ladder, which consisted of two ladders so arranged that the upper could be raised nearly to the end of the lower, by a rope and pulley adjusted to both.   When raised it was held in place by fasteners or forked "dogs", which caught and rested upon

the top rungs of the lower ladder. It had become unfitted for general use because one of the fasteners was out of repair so that when the ladder was extended it would not catch or hold, while a new hoisting rope also was needed as the old one had become worn and weak.

It was undisputed that this condition had existed for at least a month before the plaintiff was injured, and had been called to the attention of the defendant's superintendent both before and on the day of the accident, but notwithstanding its want of repair he directed that it should be taken for use by the plaintiff, and two other men who were sent by him to remove slates from the roof of a building.

From this testimony the jury could have found that the ladder was an appliance at common law, or a part of the ways, works or machinery furnished the plaintiff with which to do his work, that it was defective, and that its want of repair was known to the defendant's superintendent and in the exercise of reasonable diligence should have been known to the defendant.

In obedience to the order the plaintiff, with his fellow workmen, took this ladder with others to be used in their work, but they were not accompanied by the superintendent, who gave no directions to them concerning the manner in which the slates were to be removed.

At first the plaintiff used one of the small ladders, by which he ascended to the roof of the piazza of the building, while the other men put up the extension ladder. It appears that when half way up it dropped because the fastener was sprung, and would not grip the rung. They then tied a rope found on the premises around the two nearest rungs where the upper and lower parts connected making it a "full length ladder fully extended", and placing it against the building ascended to the main roof.

At the request of one of them who was in charge of the work, the plaintiff subsequently went up this ladder from the piazza roof to the main roof, and later, when called to come down, as he stepped on the top part the rope which was old and unfit for use broke and he was thrown to the ground and injured.

There was evidence from one of the witnesses, that in a conversation on the day before the accident the plaintiff said, refer-

ring to the ladder, that "it wasn't fit to use." If this evidence had remained uncontradicted the action would fail, for he assumed the risk. But the plaintiff previously had testified that he was ignorant of the defect, and if his subsequent contradiction of this conversation may be considered as ambiguous, the jury were to interpret all his evidence, and they could have found that he was in the exercise of due care.

But if it was the defendant's duty to provide a suitable ladder which was not done, he cannot recover unless he shows that his injury was caused by her negligence.

The men were free to do the work in their own way, and to use the means provided as they might determine, and the request made or order given in compliance with which the plaintiff descended is not shown to have been the command of a person intrusted with or exercising superintendence. As there was no evidence to support the allegation that the injury was caused by an act of superintendence on the part of any one charged with that duty, the plaintiff is compelled to rely on the allegation of defective instrumentalities.

If the ladder furnished could be found to be unfit for use as an extension ladder, it was not used in the ordinary way, for the mechanical contrivance constructed by the men was the same as if two separate ladders had been made into one for the time being by the method employed.

There was no claim that for this purpose either was out of repair, and it is plain that if the rope which held them together had not broken the plaintiff would not have fallen. The men were not obliged to use the extension ladder as such if it was unsafe, but if they decided to combine its parts and thus make one of their own, this makeshift was not a part of the ways, works or machinery of the defendant, or an implement furnished by her for the use of her servants. Nor was it any the less a temporary device which they were at liberty to construct and use because made out of the parts of an apparatus which as a whole was rendered unsafe by reason of its defective means of adjustment if used as originally designed.

If the two were not securely fastened by a sound rope, and from this cause the upper part fell while the plaintiff was using it, his accident was caused by the carelessness of his fellow ser-

vants. Even if the jury might find that originally the defendant was in fault, yet the uncontradicted evidence shows that the intervening and proximate cause of the plaintiff's injury was their negligence, for which she is not responsible. *Lynn Gas & Electric Co.* v. *Meriden Ins. Co.* 158 Mass. 570, 575. *McGuerty* v. *Hale,* 161 Mass. 51. *McKay* v. *Hand,* 168 Mass. 270, 273. *Stone* v. *Boston & Albany Railroad,* 171 Mass. 536, 539, 540.

No consideration of the fifth count is required, for under the facts shown the plaintiff being a servant of the defendant was not on the premises as a licensee.

*Exceptions overruled.*

*J. P. Crosby,* for the plaintiff.
*W. H. Hitchcock,* for the defendant.