WILLIAM OULIGHAN, administrator, *vs.* PAUL BUTLER & others (afterwards AMERICAN POWDER MILLS only).

SAME *vs.* SAME.

WILLIAM H. BENT, administrator, *vs.* SAME.

ALFRED LAWRENCE, administrator, *vs.* SAME.

Middlesex.    March 10, 1905. — October 19, 1905.

Present: KNOWLTON, C. J., LATHROP, HAMMOND, & BRALEY, JJ.

*Negligence. Practice, Civil,* Exceptions. *Master and Servant. Dynamite. Joint Tortfeasor.*

In an action under R. L. c. 171, § 2, for causing the death of the plaintiff's intestate by the negligence of the defendant or by the gross negligence of the defendant's agents or servants, if the declaration is defective for want of an allegation that the intestate left a widow, children or next of kin, but the defendant instead of taking this objection by demurrer or by a request for a ruling that proof of all the allegations set forth in the declaration does not entitle the plaintiff to recover, chooses to join issue and try the case on the pleadings as they stand, and this objection is not alluded to or called to the attention of the presiding judge, the defendant cannot raise the point upon the argument of an exception to a refusal of the presiding judge to give a general ruling at the end of the trial that upon all the evidence the action cannot be maintained.

A driver in the general employ of a transportation company, which has a contract with the proprietor of a powder factory to transport the contents of a magazine to a place of storage while the powder factory is undergoing repairs and when the repairs are completed to move it back again, if sent in charge of a wagon upon this work, can be found to have remained the servant of his general employer and not to have become the servant of the proprietor of the powder factory.

The rule, that to recover for a personal injury under the highway act the alleged defect must have been the sole cause of the injury, does not apply to an action under R. L. c. 171, § 2, for causing the death of the plaintiff's intestate by the negligence of the defendant or by the gross negligence of the defendant's agents or servants.

In an action against a powder mills corporation maintaining a magazine where gunpowder and dynamite were stored, under R. L. c. 171, § 2, for causing the death of the plaintiff's intestate by its negligence or by the gross negligence of its agents or servants, there was evidence, that the defendant received notice from a cartridge company, storing powder and occupying the adjoining premises separated by a partition of open joists, that the floor on the defendant's side of the partition was discolored, that the discoloration had spread through the partition, and that the stain was believed to be nitroglycerine, and requesting that the source of danger should be remedied at once, that only after an interval of twenty-two days, further correspondence and interviews with the defendant's superintendent having intervened, were arrangements made by the defendant to remedy this dangerous condition by removing the discolored portion and putting in a new floor, that in the meantime the cartridge company had removed its powder which was temporarily in wagons standing at some distance from the defendant's magazine, that the defendant continued to keep in its powder magazine a large quantity of explosives, and entrusted the repairs to an inexperienced servant acting without the personal supervision of the defendant's superintendent, that this servant, without removing the large quantity of dynamite and gunpowder that still remained in the magazine, poured upon the discolored area a liquid that had been furnished to him with instructions not to use it until the entire contents of the magazine had been removed, that he had been told that if the dynamite and powder then in the magazine exploded it instantly would generate a heat sufficiently intense to explode all the powder in the wagons of the cartridge company and in another storehouse of the defendant, that after applying the liquid he began scrubbing the surface with a broom, whereupon smoke arose and a general explosion followed, the gunpowder in the wagons of the cartridge company exploding as well as the dynamite and powder in the defendant's magazine, and the plaintiff's intestate, who was in charge of one of the wagons of the cartridge company, was killed. *Held,* that on this evidence the jury were warranted in finding both negligence of the defendant and gross negligence of the defendant's servant. *Held, also,* that, even if the cartridge company was negligent in not removing its wagons to a safe distance and so became a joint tortfeasor, this would be no defence for the defendant.

BRALEY, J. These are actions of tort brought by administrators under R. L. c. 171, § 2, to recover damages for the deaths of their several intestates, each of whom, at the time of his decease, is admitted to have been in the exercise of due care.

There were four defendants originally, but by reason either of pleas in abatement, that were sustained, or of rulings made at the trial, the American Powder Mills was left as the sole defendant against which each of the plaintiffs has obtained a verdict.

The remedy given being purely statutory, it became obligatory to allege and prove that the several decedents left either a widow, or children, or next of kin, to whom any damages that might be recovered were to be paid in the proportions specified by the statute.

By reason of the omission of such allegations, the declarations did not set forth a legal cause of action, and hence were demurrable. *Commonwealth* v. *Boston & Albany Railroad*, 121 Mass. 36. Or, the defect being one of substance and not of form merely, this question could be raised by a request for a ruling that proof of all the allegations pleaded did not entitle the plaintiffs to recover. *Commonwealth* v. *Eastern Railroad*, 5 Gray, 473. *Hervey* v. *Moseley*, 7 Gray, 479, 484.

But the defendant was content to join issue and to try the cases within the pleadings as they stood. Under the general request for a ruling, that upon all the evidence the actions could not be maintained, this objection was not alluded to, nor directly called to the attention of the presiding judge. By the course taken, he well may have understood, as he probably did, that nothing more was intended than to cover generally the questions more directly and fully shown by the specific requests.

It hardly can be doubted that, if the objection now raised then had been stated, this difficulty would have been obviated by an amendment, or disposed of by a distinct and positive ruling. This exception therefore cannot be considered open, because not raised before, or passed upon by the trial court. *Edwards* v. *Carr*, 13 Gray, 234, 238. *Hicks* v. *New York, New Haven, & Hartford Railroad*, 164 Mass. 424, 429.

Another exception raises the question that upon the evidence, Charles W. Moore, the intestate of the plaintiff Lawrence, at the time of his death, was in the employment or service of the defendant, and thus not within the class for whose death damages are recoverable under the statute. The Sts. of 1897, c. 416, and of 1898, c. 565, of which R. L. c. 171, § 2, is a substan-

tial re-enactment, were passed after the St. of 1887, c. 270, as amended by St. of 1892, c. 260, § 1, commonly known as the employers' liability act, took effect. When thus amended, the act contained provisions for the recovery of damages for the instantaneous death of an employee, caused by the wrongful act of his employer.

By these several remedial enactments, it must be deemed to have been the intention of the Legislature to establish a system under which damages might be awarded for death arising from the wrongful act of a person or corporation, whether the relation of master and servant did or did not exist between the decedent and those responsible for his death. Upon ascertaining the relation, it then can be determined under which statute the remedy provided is to be sought.

The fact that Moore was in the general employment of the Stanley Transportation Company, which had been hired to transport the contents of the magazine of the United States Cartridge Company, and for this purpose attended in charge of one of its teams, does not appear to have been disputed. There was uncontroverted evidence that this was his only duty, as the boxes of powder were to be loaded upon the wagons by others, who then would direct where the teams should be driven. After the loaded wagons had been taken to what perhaps was considered a safe distance, the horses were to be unhitched and sent to their stable, while the workmen were making certain contemplated repairs of the powder house. Upon the completion of these repairs, the drivers, with the horses, were to return and move back the powder.

No other directions are shown to have been given to him by any one on the premises engaged in the work of removal or of repair, nor does it appear that he otherwise was required to submit himself to their direction or control.

A servant sent to perform work for another person, with whom a contract for its performance has been made by his master, does not, by that fact alone, at common law, or by the statute under which these actions are brought, become a servant of the latter. *Driscoll* v. *Towle*, 181 Mass. 416. *Delory* v. *Blodgett*, 185 Mass. 126.

Under these circumstances, the jury could find that if subject

to the direction of those in charge, as to where he should drive his wagon after it was loaded, he still remained the servant of his original employer, who through him retained the control and care of the horses, and whether his master was employed by the United States Cartridge Company, or by the defendant, Moore did not become the general servant of either. *Huff* v. *Ford*, 126 Mass. 24. *Reagan* v. *Casey*, 160 Mass. 374. *Driscoll* v. *Towle*, 181 Mass. 416. *Delory* v. *Blodgett*, 185 Mass. 126, 129.

It therefore could not be ruled as matter of law that he was the defendant's servant, and this question rightly was submitted to the jury.

As the case was tried on the first count of the declaration, which charged negligence of the defendant, or the gross negligence of its servants or agents, in considering the remaining exceptions, it becomes important to recur somewhat fully to the evidence for the purpose of determining what legal relations, if any, it sustained to the persons present at the time of the explosion, as well as the questions of negligence.

There were two buildings, containing three magazines. Of these, two were under one roof, but were separated by a partition of open joists, about two inches apart, one compartment being used by the partnership known as the United States Cartridge Company for the keeping of gunpowder alone, while the other was occupied by the defendant for the keeping of gunpowder and dynamite, of which a large quantity of each was then on storage.

Nearly four weeks before the explosion, the employees of the first company had observed that the floor on the defendant's side was discolored, and that the discoloration had spread through the partition. Upon investigation it was decided that this was caused by the leakage from the dynamite of nitroglycerine, which had soaked into the floor.

The danger to the lives of those employed about the premises, or living in that vicinity, by reason of its explosive character, and proximity to other explosives being obvious, on July 7, notice was given to the local agent of the defendant by the United States Cartridge Company that the spot which had appeared was believed to be nitroglycerine, and requesting that the source of danger should at once be remedied. But it was

not until July 29, and after further correspondence with the defendant and interviews with its superintendent, that arrangements finally were made to remedy this dangerous condition by removing the discolored portion, and putting in a new floor.

The evidence, however, being conflicting, whether the United States Cartridge Company contracted to make these repairs, which included the temporary removal of the contents of their magazine, or whether one Goodwin, who, with the men under him, actually undertook to perform the work, was in the employment of the defendant, this question properly was left to the jury, with instructions that unless he was the defendant's servant it would not be responsible, if he was found either to have been incompetent, or grossly negligent.

If the explosion, which followed after the work began, was immediately caused by the act of Goodwin, it was open upon the evidence to find that the disaster would not have occurred except for the defendant's conduct in permitting a portion of the floor to become soaked with a high explosive, or, when informed of this condition, to continue keeping in its magazine a large quantity of explosives, or in not having the repairs made under the personal supervision of its superintendent rather than entrusting them entirely to an inexperienced servant.

That an explosion might be precipitated from one or all of these causes was a probable consequence, which in the light of common experience the defendant was called upon reasonably to anticipate, and to guard against by taking every proper precaution. *Lane* v. *Atlantic Works,* 111 Mass. 136. *Derry* v. *Flitner,* 118 Mass. 131, 134. *Hill* v. *New River Co.* 9 B. & S. 303.

Its negligence, therefore, could be found to have been the efficient cause of the accident. *McCauley* v. *Norcross,* 155 Mass. 584, 586, 587. *Lynn Gas & Electric Co.* v. *Meriden Ins. Co.* 158 Mass. 570, 575, and cases there cited. *Koplan* v. *Boston Gas Light Co.* 177 Mass. 15, 27. *Higgins* v. *Higgins,* 188 Mass. 113.

The defendant, however, urges that the rule as to proximate cause, applicable to suits for damages arising out of injuries received from defective highways, should be followed. But this rule, that the accident must be caused solely by the defect, rests on the construction of the statute, to which it should be confined.

*Lynn Gas & Electric Co.* v. *Meriden Ins. Co., ubi supra,* at page 576. *Raymond* v. *Haverhill,* 168 Mass. 382, 384. *Nestor* v. *Fall River,* 183 Mass. 265, 267.

It also is shown that the boxes of powder belonging to the other company, and temporarily on the wagons at a distance from the defendant's magazine, exploded, and there being no evidence that one explosion more than the other was the cause of the death of the decedents, the defendant takes the position that, under the statute, its negligence, or the gross negligence of its servant, must have been the sole cause of death, or the plaintiffs cannot recover.

It may be assumed that the duty still rested upon the owners of the powder, which was being removed with their knowledge and consent, properly to protect it from the hazard of its being exploded. And in view of the generally dangerous conditions that were present, if it should have been transported to such a distance as to preclude all danger of its taking fire, provided the contents of the defendant's magazine were ignited, then their conduct might be found to have been negligent, thus contributing to the deaths of the intestates.

But even then the rulings requested on this branch of the case were inappropriate. In the practical furtherance of justice, it is a principle of the law of torts, that where two or more wrongdoers injure another in person or in property by their several acts, all of which are concurrent and contribute to one wrong, but which might have been caused by each, then if upon the evidence no distinction can be drawn between their acts, they all are jointly or severally liable. *Boston & Albany Railroad* v. *Shanly,* 107 Mass. 568, 579. *Munroe* v. *Carlisle,* 176 Mass. 199. *Corey* v. *Havener,* 182 Mass. 250.

For convenience, joint tortfeasors may be joined in one suit, or sued separately, but the measure of recovery, under R. L. c. 171, § 2, would be the same, though there could be but one satisfaction of any judgment that might be obtained. *Elliott* v. *Hayden,* 104 Mass. 180. *McAvoy* v. *Wright,* 137 Mass. 207.

In answer to questions submitted to them, the jury also found that the agents or servants of the defendant were grossly negligent. To reach correctly this conclusion, they must have determined, under the instructions, that Goodwin was present as the

defendant's servant, and their answer to the second question should be taken to refer to, and characterize, his conduct.

Unless there was evidence to sustain this finding, then the defendant's fourteenth request should have been given. The dangerous character of the undertaking was fully known to him. Without removing the large quantity of dynamite and gunpowder that still remained in the defendant's compartment, he poured upon the discolored area a liquid that had been furnished to him, but which he was instructed not to use until the entire contents of both magazines had been removed.

It further distinctly appears that he was told that if the dynamite and powder then in the defendant's magazine exploded, it instantly would generate a heat sufficiently intense to fire all the powder on the teams and in the other storehouse. After applying this liquid, he began scrubbing the surface with a broom. Thereupon smoke arose, which increased in volume, and though water was applied, it could not be extinguished, and a general explosion followed.

To use deliberately, and attempt to brush in, a solution without knowing what the effect would be, and where the highest degree of care should have been exercised, was not according to the dictates of common prudence and foresight. Upon proper consideration, as a reasonable man, he must have known of the dangerous surroundings, and have realized that any agency used might be attended with great danger. Neglecting obvious precautions, he unhesitatingly went forward, when he ought to have ascertained what effect the solution, and his manner of applying it, would have upon the nitroglycerine; or, if an experiment was to be made without such knowledge or examination, then he should have taken every precaution against a possible explosion.

Owing to the inflammable nature of the substance with which he was called upon to deal, and where unless the greatest care was exercised ignition might take place, followed probably by destruction of life and property, the jury well might find that his conduct was not only lacking in ordinary care, but rose to that degree of reckless indifference to consequences sufficient to constitute gross negligence. *Galbraith* v. *West End Street Railway*, 165 Mass. 572, 581. *Banks* v. *Braman*, 188 Mass. 367.

Although the plaintiffs rightly were allowed to go to the jury upon both issues, these grounds of liability have been held distinct in statutory actions against corporations operating railroads and railways for loss of life of one not being a passenger. *Commonwealth* v. *Boston & Maine Railroad,* 133 Mass. 383. *Peaslee* v. *Fitchburg Railroad,* 152 Mass. 155. *Gay* v. *Essex Electric Street Railway,* 159 Mass. 242. *Gordon* v. *West End Street Railway,* 175 Mass. 181.

The statute on which the present cases are founded extends the remedy for death by wrongful act to all corporations, and should be construed similarly. *Kelsey* v. *New York, New Haven, & Hartford Railroad,* 181 Mass. 64, 68.

We assume from the silence of the bill of exceptions upon this point that this distinction was pointed out, and that the jury were instructed that if they found the accident was caused by the defendant's negligence they would have no occasion to determine the question of gross negligence.

There was no exception taken to the rulings on the measure of the defendant's liability, and the jury were instructed accurately that recovery could not be had for damages as in an action of tort for personal injuries; but that the remedy provided was in the nature of a penalty, which must be assessed according to the degree of the defendant's culpability, or that of its servants. *Hudson* v. *Lynn & Boston Railroad,* 185 Mass. 510, 517, 518.

*Exceptions overruled.*

*G. L. Mayberry,* (*F. L. Washburn & J. C. Burke* with him,) for the American Powder Mills.

*W. H. Bent,* for the plaintiffs.