EUGENE F. FARLEY, ADMINISTRATOR, vs. THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, New Haven, June Term, 1913.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A certification of the evidence and rulings as a part of the record is sufficient for an appeal from the denial of a motion to set aside the verdict, but not for an appeal from the judgment; for that purpose a finding of what occurred upon the trial, made in the manner prescribed by General Statutes, § 792, is necessary.

A direction, accompanying such a certification, that the certified transcript of evidence and rulings be printed as a part of the record, will be construed merely as an order that it be made or become a part of the appeal record, and not that it is to be printed as a part of the finding at the expense of the State.

In so far as the Employers Liability Act of Congress (35 U. S. Stat. at Large, p. 65) provides for a recovery for death, it follows Lord Campbell's Act in England and creates a right of action where none existed at the common law, and one which is entirely independent of any the decedent may have had in his lifetime. Such right of action is for the exclusive benefit of those surviving relatives of the deceased employee who are specified in the statute, and the damages recoverable are measured by and confined to the actual pecuniary loss sustained by them in consequence of his wrongful death. In this respect the Act of Congress differs radically from the provisions of our statute (Public Acts of 1903, Chap. 193, § 4), under which the damages recoverable are to be viewed from the standpoint of the decedent and measured upon the basis of the loss sustained by his estate.

As tending to enhance or diminish this pecuniary loss, evidence is admissible of the character of the relation and feeling which existed between the decedent and the beneficiary on whose behalf the action is brought, and the disposition of the decedent to recognize or repudiate the obligations, moral or legal, naturally incident thereto, as well as his financial ability to respond to them.

A complaint which contains no allegation that the deceased employee left any one of the surviving relatives mentioned in the Act is clearly defective, in that it fails to state a cause of action; and the absence of such averment cannot be supplied by presumption.

Whether such a complaint is sufficient, after verdict, to support a judgment, quære.

Farley *v.* New York, N. H. & H. R. Co.

The plaintiff's intestate, a locomotive engineer, was killed while climbing from the rear of his tender, where he had inspected the water in the tank, by coming in contact with a highly charged overhead electric wire used by the defendant to supply power for the movement of its passenger trains.    *Held* that a statute (4 Public Statutes of New York, p. 4751, § 49, originally enacted in 1884) which required every railroad company which operated its trains by steam, to erect and maintain suitable warning signals at every road, bridge or structure which crossed the railroad above its tracks, where such warning might be necessary for the protection of employees on the top of cars, had no reference or application to the situation in the present case, where electric wires followed the line of tracks and constituted an essential part of the railroad construction.

Argued June 5th—decided July 25th, 1913.

ACTION under the so-called Federal Employers Liability Act to recover damages for causing the death of the plaintiff's intestate by negligence, brought to the Superior Court in New Haven County and tried to the jury before *Shumway, J.;* verdict and judgment for the plaintiff for $5,000, and appeal by the defendant. *Error and new trial ordered.*

The complaint alleges that John H. Bottomley, the plaintiff's intestate, while acting in the performance of his duties as a locomotive engineer in the employment of the defendant, a common carrier engaged in interstate commerce, met his death through the insufficient and defective condition of its equipment due to its negligence.    It alleges that his death was instantaneously caused by his having been brought into contact with or near to a wire, charged with an exceedingly high voltage of electricity, suspended along and over the middle line of the tracks upon which the intestate's engine was proceeding, and used for the operation of the defendant's trains, so that the electric current passed through his body.    It is charged that the defective condition complained of arose out of the scant distance above the rails at which the wire was suspended at the point of accident, and the absence of warnings of its

proximity to trainmen upon passing trains, or of safe-
guards from its dangers.   The negligence complained
of consisted in permitting these conditions to exist.
The complaint recites that the action occurred while the
intestate, in the proper discharge of his duties, and in
the exercise of due care, was passing over the tender in
returning from the water-tank; that the place of acci-
dent was beneath an overhead highway bridge where
the height of the wire from the top of the rails had been
reduced from twenty-two feet six inches, the ordinary
distance, to about fifteen feet so as to enable it to pass
under the bridge.

The complaint contains no allegation that the in-
testate left surviving him either a widow, child, parent
or next of kin dependent upon him.

Upon the trial the defendant presented a consider-
able number of requests for instructions to the jury,
among which were the following, touching the subject
of the measure of damages in the event of recovery:—

"19. If you should find that the plaintiff is entitled
to damages, you should measure the damages from the
point of view of the surviving wife and child.   The rule
of damages is not the ordinary one familiar in this State
of loss to the estate of the deceased, but the financial
loss to those he leaves behind him.

"20. In estimating the damages to the plaintiff's
wife and child, if you find that they are entitled to
damages, you should bear in mind that it is the financial
loss alone to them which is to be considered.  You are
not to take into consideration for any purpose the grief
or sorrow of the survivors, but only the financial loss
which they have suffered in the death of Bottomley.

"21. In considering the financial loss, if any, which
Bottomley's death caused to his wife and child, you
should consider not only what his earnings had been
and what they were likely to have been in the future,

but the amount which he had actually contributed to their support in the past, and the amount which, under all the circumstances, he would have been likely to contribute in the future, his character, habits and health, and any other facts and circumstances appearing in the evidence which enable you to say how much financial loss his death actually caused to his wife and child."

The court's instructions upon the subject of damages, aside from those relating to their diminution on account of the deceased's contributory negligence, if any, were as follows: "Now, upon the question of damages, in case you find for the plaintiff, the general rule is that you will assess such damages as will make good the loss sustained by his estate, or, what is substantially the same thing, the measure of damages for an injury causing death is compensation for the pecuniary loss to the surviving beneficiaries from the death of the deceased, and [among] the circumstances to be considered in arriving at the loss to his surviving beneficiaries, you may take into account the age of the deceased, the amount of his earnings, his habits of life, the condition of his health, and the probable duration of his life, but in no case should you assess damages in excess of the amount claimed in the plaintiff's complaint, fifteen thousand dollars."

The court admitted in evidence, against the defendant's objection, § 49, p. 4751 of volume 4 of the Public Statutes of New York, edition of 1909, which, in that portion claimed to be pertinent, provides that "it shall be the duty of every railroad corporation operating its road by steam . . . to erect and thereafter maintain such suitable warning signals at every road, bridge, or structure which crosses the railroad above the tracks, where such warning may be necessary, for the protection of employees on top of cars from injury." The defendant claimed that this statute did not come within

the purview of that portion of § 3 of the Federal statute upon which the action was brought (35 U. S. Statutes at Large, p. 65), which provides that no employee who should be injured or killed should be held guilty of contributory negligence in any case where the violation by the carrier of any statute enacted for the safety of employees contributed to the injury or death of such employees, or of a similar provision in § 4 touching the assumption of risk. It also claimed that in no event was the New York statute applicable to a situation like that before the court. Requests for instruction covering these two propositions, and including one that the statute was of no importance in the case and should be left out of the jury's consideration, were presented by defendant's counsel and not complied with. On the contrary, the jury was told that the provisions of the Federal statute were such that if the carrier was violating any statute enacted for the safety of its employees, and such violation contributed to the injury or death of an employee, the latter could not be held to have assumed any risk in his employment, or to have been guilty of contributory negligence in any degree.

Included in the charge were instructions touching the subject of the diminution of damages recoverable by reason of the contributory negligence of the deceased, which are not complained of.

The plaintiff presented as a witness the widow of the deceased. Upon cross-examination she was asked if, during the preceding five years, her father-in-law had not contributed to her support, if she could give any idea how much her husband contributed, if she had not kept house for her father-in-law, her child living with her, and he paying the bills, if for the last two or three years prior to her husband's death the relations between herself and her husband had not been unpleasant, if just prior to his death the subject of divorce had not been

discussed between them, and if it were not a fact that his insurance policies were made payable to his father. All these questions were upon objection excluded.

After the verdict the defendant moved in arrest of judgment for the reason that the complaint contained no allegation that the deceased left surviving him any widow, child, parent, or next of kin dependent upon him, or that any widow, child, parent, or next of kin dependent upon him suffered any pecuniary loss by reason of his death. This motion was denied, and judgment rendered upon the verdict.

*Thomas M. Steele* and *Harrison T. Sheldon,* for the appellant (defendant).

*Charles S. Hamilton,* for the appellee (plaintiff).

PRENTICE, C. J. The defendant assigns, as reasons of appeal, the failure of the trial court to instruct the jury as requested, certain instructions as given, rulings upon the admission of testimony, and the denial of motions in arrest of judgment and to set aside the verdict.

The first paragraph of the finding certifies that an annexed exhibit contains a correct statement of the evidence and rulings, and directs that such exhibit be printed as a part of the record. Here is a sufficient certification of the rulings for the purposes of the appeal from the denial of the motion to set aside the verdict. *Farrington* v. *Cheponis,* 84 Conn. 1, 4, 78 Atl. 652. Such certification, however, although embodied in the finding, serves no useful purpose in connection with the appeal from the judgment. The transcript is before us only as an incident of the former appeal, and its sole office is in that connection. *Summa* v. *Dereskiawicz,* 82 Conn. 547, 548, 74 Atl. 906. In so far as information concern-

ing what transpired upon the trial may be necessary for our guidance in the consideration of assignments of error, we are confined to such as may be embodied in the finding in the manner prescribed by statute regulating the preparation of findings. General Statutes, § 792.

Application of this principle operates to practically eliminate from the reasons of appeal some of the assignments of error, since the necessary data for their consideration is lacking. This, however, is not true of all or of perhaps the most important of the assignments. The finding apprises us of the defendant's requests to charge and of the charge as made. Those questions which relate to the appropriateness or adequacy of the charge as related to the cause of action set out in the complaint are thus sufficiently presented. The same is true of the rulings upon the admission of testimony. They are stated as required, and the complaint supplies all the other information necessary to pass upon their correctness intelligently.

In this connection we note that the finding contains a direction that the transcript of evidence and ruling be printed as a part of the record. The statute prescribes that it shall be certified and made a part of the record. The matter of printing it is specially provided for and ultimately rests with the parties. We assume that the intention of the judge was limited to making it a part of the appeal record, and that there was no purpose on his part to direct its printing at the expense of the State as a part of the finding. The former construction should be given to the language used.

The court's instructions upon the subject of the measure of damages were erroneous. The statute under which the action was brought, in so far as it provides for recovery for death, follows the lines of Lord Campbell's Act in England, and in its distinguishing features

is identical with that Act. *Michigan Central R. Co.* v. *Vreeland*, 227 U. S. 59, 68, 70, 33 Sup. Ct. Rep. 192. It creates a right of action where there was none at common law, and one which is entirely independent of any which the deceased may have had in life and which comes originally to the personal representative by the operation of the statute, and not by the process of survival. It is one for the exclusive benefit of certain specified persons, and the damages recoverable are such as result to them by reason of their having been deprived through the wrongful death of the deceased of a reasonable expectation of pecuniary benefits attendant upon his continuance in life. *American R. Co.* v. *Didricksen*, 227 U. S. 145, 149, 33 Sup. Ct. Rep. 224; *Michigan Central R. Co.* v. *Vreeland*, 227 U. S. 59, 65, 33 Sup. Ct. Rep. 192. The intention of the statute was to secure to certain surviving relatives of the deceased employee compensation for "the actual pecuniary loss resulting to the particular person or persons for whose benefit an action is given." *Gulf, C. & S. F. Ry. Co.* v. *McGinnis*, 228 U. S. 173, 175, 33 Sup. Ct. Rep. 426. The loss and its measure of damages are to be determined solely from the standpoint of the beneficiaries. It is their loss alone of which the statute takes cognizance, and the field of that loss is limited to what is termed the "pecuniary" as distinguished from the sentimental, or that which flows from grief or wounded feelings. *Michigan Central R. Co.* v. *Vreeland*, 227 U. S. 59, 70, 33 Sup. Ct. Rep. 192.

The policy thus established and the situation thereby created are no new ones. Long prior to the enactment of the Federal statute they existed in England, under Lord Campbell's Act, and in those jurisdictions in this country where the distinguishing features of that Act have been enacted. Congress simply followed the lines of these statutes whose operation had been judicially

declared repeatedly, and in its legislation adopted the policy promulgated in them. *Blake* v. *Midland Ry. Co.*, 18 Q. B. (Ad. & E. N. S.) 93, 109; *Seward* v. *Vera Cruz*, L. R. 10 App. Cas. 59; *Michigan Central R. Co.* v. *Vreeland*, 227 U. S. 59, 68, 33 Sup. Ct. Rep. 192. The series of cases arising under the Federal statute, decided by the United States Supreme Court, already referred to, leaves no room for doubt either as to its scope and purpose, or as to the rule for the assessment of damages upon recovery under its provisions. It may not include compensation for what the deceased may have suffered in his lifetime, or for any loss accruing to his estate by reason of his life having been cut off. The recovery is strictly limited to compensation for the pecuniary loss to the beneficiaries, and can comprehend no other. Such being the rule, it follows that the amount recoverable in given cases must be influenced by the nature of the relation between the beneficiaries and the deceased, the obligations, moral or legal, naturally incident to such relation, the extent of the recognition which the deceased made of that obligation, his financial ability to make such recognition, his disposition to do so as shown by experience, and the thousand and one circumstances calculated to throw light in some substantial way upon the reasonable expectation of benefits of which the beneficiaries were deprived by the death. "The rule for the measurement of damages must differ according to the relation between the parties plaintiff and the decedent, 'according as the action is brought for the benefit of the husband, wife, minor child or parent of minor child,' for the loss of services or support to which the beneficiary was legally entitled, or is brought for the benefit of a person whose damages consist only in the loss of a prospective benefit to which he was not legally entitled." *Michigan Central R. Co.* v. *Vreeland*, 227 U. S. 59, 72, 33 Sup. Ct. Rep. 192. See

also *Fithian* v. *St. Louis & S. F. Ry. Co.*, 188 Fed. Rep. 842, 844.

Our statute giving a right of action for injuries resulting in death proceeds upon very different lines, and leads to results radically different from those accomplished by the Federal statute. In *Kling* v. *Torello, ante*, 301, 87 Atl. 987, we had occasion to notice at some length the extent of this difference, not only in respect to the theory upon which the two enactments proceed, but also in respect to the consequences of their concrete application. We saw that it was not one of mere form or expression, but that it was fundamental, and productive of practical consequences, and especially so in the matter of the basis of recovery and in the measure of compensation to be awarded. We need not repeat what was then said, or restate the Connecticut rule defining the extent of recovery further than to recall that its controlling feature, entirely foreign to Lord Campbell's Act and statutes of that general class, is that the damages recoverable are to be measured from the standpoint of the deceased, and compensation awarded upon the basis of the loss suffered by his estate.

The court in its charge overlooked this vital difference between the Federal statute and ours, and erred in instructing the jury to award such damages as would make good the loss sustained by the decedent's estate as being substantially the same thing as compensation for the pecuniary loss to the surviving beneficiaries, and then proceeding to direct particular attention to certain matters as deserving of consideration, which are those of chief importance under our law, while entirely ignoring others of equal and vital importance under the Federal statute. Defendant's requests to charge called attention to some of these matters. The jury should not have been instructed to assess the damages upon the basis of the loss to the estate of the de-

ceased, but upon that of the pecuniary loss to the beneficiaries predicated upon their having been deprived by the death of a reasonable expectation of pecuniary benefits. Touching this subject the defendant's requests 19 to 21 should not have been disregarded. These requests embodied a substantially correct statement of distinctly pertinent principles of which the defendant was entitled to have the jury informed, with such added explanation as to what the law means by "pecuniary loss," as that phrase is used in this connection, as was calculated to lead to an intelligent application of the rule. *Michigan Central R. Co.* v. *Vreeland*, 227 U. S. 59, 33 Sup. Ct. Rep. 192; Hale. on Damages (2d Ed.) p. 426 *et seq.*

There was error in the admission of the New York statute, and in not withdrawing it from the jury's consideration. We have no occasion to determine whether the reference in the Federal statute to statutes enacted for the safety of employees comprehends State enactments. The New York statute admitted in evidence does not deal with a situation such as the plaintiff complains of, and defendant's counsel were quite right in contending that it was irrelevant, and in asking that the jury be told to dismiss it from consideration as possessing no importance. Framed to regulate the operation of roads operated by steam, it aims to protect trainmen from structures which span tracks and constructions which extend across them. A warning signal is to be placed at every overhead road, bridge, or structure crossing the railroad. Its purpose was accomplished by the maintenance of the familiar "tell-tale" to announce the proximity of overhead danger. Constructions which follow the line of the tracks, foreign to steam operation, until quite recently unknown to railroad service and unknown when the Act in question was enacted, do not come within its language or intent;

and its provisions are not appropriate for protection from them. To convert the statute into one demanding warning signals suitable and effective for protection against overhead wires suspended along the line of railroad tracks for the electric operation of transportation, is to enlarge its scope by judicial legislation, to fit situations, which were plainly never contemplated, under the guise of giving to its language an interpretation not consistent with its natural import, and by attributing to it a purpose manifestly never intended.

The questions propounded to the widow of the deceased upon cross-examination, as recited in the finding, were improperly excluded. They were distinctly relevant as bearing upon the pertinent inquiry as to the extent of the pecuniary benefits reasonably to have been expected by her, had her husband lived, of which she had been deprived by his wrongful death. There was no better way of judging future expectation than by past experience, and few lines of inquiry could well be more illuminating as to what of pecuniary or material worth a wife might reasonably hope for from her husband, consistent with his means and ability, than one which disclosed the character of their relations and feelings toward each other.

Since a new trial must be ordered, it is unnecessary to inquire whether the complaint was sufficient after verdict to support a judgment. It is clearly defective for the reason that it contains no allegation that the deceased left a surviving widow, child, parent, or next of kin dependent upon him. Unless there was such survivor, there was no cause of action. The situation is very different under the Federal statute from what it is under ours, where, failing other beneficiaries, the amount recovered goes to the heirs at law of the deceased to be divided in accordance with the statute for the distribution of intestate estates. "In the ab-

sence of anything to the contrary it will always be presumed that if there is no widow or husband or lineal descendants, there are heirs to whom a distribution of personal estate can be made." *Pitkin* v. *New York & N. E. R. Co.*, 64 Conn. 482, 487, 30 Atl. 772; *Budd* v. *Meriden Electric R. Co.*, 69 Conn. 272, 284, 37 Atl. 683. There is no basis for a presumption that one dying leaves a husband, widow, child, parent, or next of kin dependent upon him. Absence of allegation to that effect cannot, therefore, be supplied by presumption. It must appear in the complaint that such a person there was, or there is a failure to state a cause of action. *Melzner* v. *Northern Pac. Ry. Co.*, 46 Mont. 277, 287, 127 Pac. 1002, 1004; *Thomas* v. *Chicago & N. W. Ry. Co.*, 202 Fed. Rep. 766, 770; *Bankson* v. *Illinois Central R. Co.*, 196 Fed. Rep. 171, 172; *Fithian* v. *St. Louis & S. F. Ry. Co.*, 188 Fed. Rep. 842; *Oulighan* v. *Butler*, 189 Mass. 287, 289, 75 N. E. 726; Tiffany on Death by Wrongful Act (2d Ed.) §§ 80, 181.

Other assignments of error either cannot be intelligently considered for want of adequate information in the finding, or need not be by reason of the conclusions we have reached.

There is error and a new trial is ordered.

In this opinion the other judges concurred.