NORFOLK & W. RY. CO. v. HOLBROOK.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1914.)

No. 1230.

1. EXCEPTIONS, BILL OF (§ 7*)—FORM—SEPARATE BILLS.

Though each matter occurring at the trial on which error is assigned must be brought up and preserved by bill of exceptions, it is not necessary to prepare separate bills for each separate matter, but all the alleged errors may be incorporated in one bill.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 9; Dec. Dig. § 7.*]

2. EXCEPTIONS, BILL OF (§ 1*)—PURPOSES—ASSIGNMENTS OF ERROR.

The sole purpose of bills of exception and assignments of error is to bring separately and clearly the matter complained of before the trial judge, so that he may have an opportunity to grant relief if he thinks proper, and so that defendant in error and the appellate court may know the precise points to be decided.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 1; Dec. Dig. § 1.*]

3. EXCEPTIONS, BILL OF (§ 13*)—EVIDENCE—IDENTIFICATION.

A bill of exceptions was made up with a slip pinned in the proper place, containing a direction, "Here insert all the evidence, beginning with the words, 'And the plaintiff,' on page 8, and concluding with the end of the testimony for both plaintiff and defendant on page 531," referring to the transcript. By inadvertence the typewritten copy of the evidence having the paging indicated was not actually inserted, but was separately filed. *Held*, that in the absence of an attack made on the correctness of the copy, the evidence appearing in the printed record being that covered by the certificate of the district judge, it was sufficiently identified so as to become a part of the bill of exceptions.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 13; Dec. Dig. § 13.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. MASTER AND SERVANT (§ 286*)—DEATH OF SERVANT—RAILROAD EMPLOYÉS—
SAFETY PRECAUTION.

In an action for death of a railroad employé under federal Employers'
Liability Act April 22, 1908, c. 149, 35 Stat. 65, as amended by Act April
5, 1910, c. 143, 36 Stat. 291 (U. S. Comp. St. Supp. 1911, p. 1324), by be-
ing struck by a train while decedent was working on a bridge, evidence
*held* to require submission to the jury of the railroad company's negli-
gence in failing to keep a proper lookout and to warn decedent of the
danger.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec.
Dig. § 286.*]

5. MASTER AND SERVANT (§ 291*)—INJURIES TO SERVANT—INSTRUCTIONS—CON-
STRUCTION.

Where the court charged that the verdict should be for plaintiff if the
jury found that decedent's death was due to the negligence of "other
agents or employés," the clause quoted referred to agents or employés
other than decedent and excluded decedent and included decedent's fore-
man, by whose negligence it was claimed decedent was killed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1133,
1134, 1136–1146; Dec. Dig. § 291.*]

6. DEATH (§ 104*)—DAMAGES—EMPLOYERS' LIABILITY ACT.

Since in an action for wrongful death of a railroad employé under fed-
eral Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65, as
amended by Act April 5, 1910, c. 143, 36 Stat. 291 (U. S. Comp. St. Supp.
1911, p. 1324), the jury in determining the damages may properly con-
sider the character of his family, the court, in an action for death of an
employé leaving a wife and infant children, properly charged that, while
plaintiff could only recover the pecuniary injury sustained, yet such in-
jury would be greater where the beneficiaries were the widow and infant
children of the decedent than where they were other relatives who might
be dependent on him.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 142–148; Dec.
Dig. § 104.*]

In Error to the District Court of the United States for the Western
District of Virginia, at Roanoke; Henry Clay McDowell, Judge.

Action by Sarah E. Holbrook, as administratrix of W. T. Holbrook,
deceased, against the Norfolk & Western Railway Company. Judg-
ment for plaintiff, and defendant brings error. Affirmed.

Writ of error to Supreme Court allowed, 215 Fed. 1007.

Roy B. Smith and Marshall McCormick, both of Roanoke, Va., and
F. Markoe Rivinus, of Philadelphia, Pa. (McCormick & Smith, of
Roanoke, Va., and Theodore W. Reath, of Philadelphia, Pa., on the
brief), for plaintiff in error.

William H. Werth, of Tazewell, Va., for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. W. T. Holbrook, a bridge carpenter, was
killed in January, 1913, on one of defendant's railroad bridges by a
passenger train, known as No. 15. The plaintiff, his widow, as ad-
ministratrix of his estate, suing for the benefit of herself and his five
infant children under the act of Congress of 1908 as amended in 1910,
recovered judgment for damages in the District Court for the Western

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

District of Virginia, under the allegation that her intestate's death was caused by the negligence of the defendant.

[1] The motion to dismiss the appeal must be refused. The first ground for the motion presented at the argument that every matter charged as error should be brought up by a separate bill of exceptions is disposed of by this language of Mr. Justice Brewer in Lees v. United States, 150 U. S. 482, 14 Sup. Ct. 165, 37 L. Ed. 1150:

"It is well settled that, instead of preparing separate bills for each separate matter, all the alleged errors of a trial may be incorporated into one bill of exceptions."

[2] The principle cannot be too strongly emphasized that the sole purpose of bills of exceptions and assignments of error is to bring separately and clearly the matters complained of before the trial judge so that he may have the opportunity to grant relief if he thinks proper, before counsel for defendant in error, so that he may be advised of the precise points to be met in argument, and before the appellate court, so that it may readily perceive the points to be decided and the portions of the record on which they depend. Repetition not necessary to these ends should not incumber the record.

[3] The second ground for the motion is that the evidence is not incorporated in the exceptions so as to be sufficiently identified. The only assignment of error requiring any particular reference to the evidence is that alleging that on the whole evidence the District Judge should have directed a verdict for the defendant. The record shows clearly that it was the intention of counsel and the District Judge to incorporate the entire testimony in the bill of exceptions. To that end at the proper place a slip of paper was pinned, on which was typewritten:

"(Here insert all the evidence, beginning with the words 'And the plaintiff,' on page 8, and concluding with the end of the testimony for both plaintiff and defendant on page 531.)"

By inadvertence the typewritten copy of the evidence, having this paging indicated, was not actually inserted, but was separately filed. No attack is made on the correctness of the copy, and it appears in the printed record as the evidence covered by the certificate of the District Judge; but it is said nevertheless not to be identified. It would be applying technicality beyond all reason to hold that testimony identified by the paging, unquestioned as a matter of fact, and relating on its face to the cause, was not the testimony which the District Judge meant to certify. The facts leave the case entirely outside of the principle, laid down in 2 Foster on Fed. Prac. (5th Ed.) 1594, and a number of cases, that documents or other evidence referred to in the bill will be excluded from consideration if not properly identified.

[4] 2. On the merits it is contended that the District Judge should have directed a verdict for the defendant on the ground that the evidence was insufficient to warrant the inference of negligence on the part of the defendant as a proximate cause of the death of Holbrook.

When Holbrook was killed he, in company with five other men under the directions of the Foreman Carbaugh, was putting down guard rails on the west-bound track of a double-tracked bridge 228 feet long.

Within 50 feet of the west approach of the bridge there is a curved tunnel, and near the east approach there is another curve in a cut. Trains passed frequently, and those coming from the west through the tunnel drew the smoke over the bridge. These conditions made the place of work one of great danger, requiring on the part of the defendant corresponding care in the protection of its men. Recognizing this duty in such conditions the railroad company required of its foremen the observance of these rules:

"Foremen or others in charge of employés working on or about the tracks must instruct their men to be alert, watchful, and to keep out of danger; and will take all reasonable precautions to see that all men working under their immediate supervision receive warnings of approaching trains in time to reach a place of safety.

"When working on tracks in places where approaching trains cannot readily be seen because of permanent obstructions to the view, or temporary obstructions, such, for instance, as fog, storms, snow or engines or cars, extra precautions must be taken to warn the men of approaching trains.

"As an extra precaution, when necessary to place a watchman at some distance from the men at work on the tracks, or in such location that his signals may not be understood, additional watchmen should be placed so that the signals can be passed to the men at work and return signals obtained. In case return signals are not received, and understood, the watchman must signal the train to stop."

Carbaugh, the foreman, took no other precautions than to stand on the east-bound track and call "railroad" or "clear up" on observing the approach of a train. In this situation west-bound passenger train 15 passed, with signals that another section was to follow. Several hours afterwards east-bound freight train 92, carrying about 40 cars, came through the tunnel pulling smoke over the bridge. Before all the cars had cleared the bridge, the second section of west-bound passenger train 15 approached from the curve on the east side on the track where Holbrook was working, and killed him. Carbaugh's range of vision on the track towards this train was not more than 300 or 400 feet, which would be run by a train going 30 miles an hour in not exceeding 10 seconds. When the foreman made the call for train 92, Holbrook and the witness Walters were engaged in framing a new guard rail on the west-bound track, and between that call and the approach of train 15, it was necessary for Holbrook and Walters to take the timbers off the track and get to a place of safety on the girders or floor beams beyond the track. No witness saw Holbrook when he was struck, and there is some conflict in the evidence as to his situation when train 15 was about to reach his position, but the conflict is not material. Taken together, the evidence leaves no doubt that Holbrook was struck either while he was in the act of removing a piece of timber from the track or immediately after removing it and before he reached a place of safety.

This short statement of the admitted conditions and the precautions taken by Carbaugh is enough to show clearly that there was good ground for the jury to infer that the precautions were not such as due care required, and that in anticipation of the danger to which the workmen would be subjected from the contingency of two trains approaching the bridge at the same time from opposite directions, Car-

baugh should have protected them by flags. The motion to direct a verdict was therefore properly refused.

[5] 3. The defendant charges error in an instruction that the verdict should be for the plaintiff if the jury found that Holbrook's death was due to the negligence of any of defendant's servants other than Carbaugh, when there was no evidence of negligence of any other employé. The expression, "other agents or employés" used in the charge clearly meant agents or employés other than Holbrook himself, and therefore was proper, since it excluded Holbrook and included Carbaugh.

[6] 4. After charging the jury that the recovery, if any, was to be measured by the pecuniary loss suffered by the widow and children as the direct result of the death of the husband and father, and that damages for sorrow and loss of love or other purely sentimental injury could not be allowed, the District Judge gave the following instruction, which is assigned as error:

"However, the court instructs you that where the persons suffering injury are the dependent widow and infant children of a deceased husband and father, the pecuniary injury suffered would be much greater than where the beneficiaries were all adults or dependents who were mere next of kin, so that the relation existing between deceased and the infant beneficiaries prior to his death is a factor in fixing the amount of the merely pecuniary damages."

In construing the statute of 1885 applicable to the District of Columbia, the Supreme Court of the United States said as to the measure of damages:

"Under such a statute, it is entirely proper that the jury should take into consideration the age of the deceased, his health, strength, capacity to earn money, and family. The injury done to a family consisting of a widow and helpless young children, who depended for support entirely upon the labor of a husband and father whose death was caused by the wrongful act of others, is much greater than would be done to any 'next of kin' able to maintain themselves, and who have never depended, and had no right to depend, upon the labor or exertions of the deceased for their maintenance." Baltimore & P. R. Co. v. Mackey, 157 U. S. 72, 15 Sup. Ct. 491, 39 L. Ed. 624.

In the course of full discussion of the subject in Michigan, etc., R. Co. v. Vreeland, 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. 417, the court, after emphasizing the rule that the recovery must be limited to pecuniary loss from the death, continues:

"The rule for the measurement of damages must differ according to the relation between the parties plaintiff and the decedent, 'according as the action is brought for the benefit of the husband, wife, minor child, or parent of minor child, for the loss of services or support to which the beneficiary was legally entitled, or is brought for the benefit of a person whose damages consist only in the loss of a prospective benefit to which he was not legally entitled.' Tiffany, Death by Wrongful Act, §§ 158, 160, 161, 162."

Difference in the value of prospective support, and intellectual, moral and physical training to be expected from a father or mother, and from any other benefactor, inheres in the nature of social relations. While no compensation can be given for the loss of love, yet in estimating the pecuniary value of expected maintenance and training, the fact

cannot be ignored that it will be increased in proportion to the intelligent solicitude which prompts the service, and that therefore maintenance of a wife by her husband, and maintenance and training of children by their father, will, as a rule, be of greater value than like service from other kindred. This difference is clearly implied in the case last cited. In recognition of the principle it has been held that in estimating damages for the death of a husband the legal obligation to support is not the sole factor, and that alienation of affection, separation, strained relations, and contemplated divorce proceedings might be proved and should be considered by the jury in favor of the defendant. Fogarty v. Northern Pacific Ry. Co., 74 Wash. 397, 133 Pac. 609; Farley v. New York, N. H. & H. R. Co., 87 Conn. 328, 87 Atl. 990.

But not only this reasonable expectation of greater voluntary service, but the legal obligation of a husband and father to support his wife and children makes his life of greater pecuniary value to them than the life of any other upon whom they might be dependent. In view of the general principle applied to the undisputed evidence in this case that the deceased was a capable and industrious workman, devoted to his family and assiduous in the discharge of his domestic obligations, it cannot be said that there was error of law in the instruction that the pecuniary injury to a wife and infant children from the death of the husband and father would be much greater than from the death of any other relative upon whom they might be dependent.

Affirmed.