### FRANCIS E. CHILDS, JR. *vs.* THOMAS O'LEARY.

Suffolk.   March 9, 1899. — July 3, 1899.

Present: HOLMES, KNOWLTON, LATHROP, BARKER, & HAMMOND, JJ.

*Negligent Blasting of Rock — Evidence — Expert — Damages.*

In an action for damage caused to the plaintiff's property by the negligent blasting of rock, a witness, who had qualified as an expert on building and stone work, testified that he had had half a dozen contracts where he had blasting to do; that he had made a study of blasting and of the vibrations; that he knew the effect of a blast on rock as compared with the effect of a blast on earth; that he had personally superintended four large jobs of blasting; and that, among other jobs, he blasted the cellar right under a school building while the school was in session, and did not break a pane of glass in the building. *Held,* that it was within the power of the judge to allow him to testify as an expert on blasting.

At the trial of an action for damage caused to the plaintiff's property by the negligent blasting of rock, it appeared that the plaintiff and the defendant owned adjoining parcels of land abutting on the rear upon a high ledge; that the surface of the plaintiff's lot was mostly on the upper part of the ledge, and the defendant's below; and that through the defendant's negligence in blasting on his portion of the ledge, the plaintiff's house was injured, and a wall about twenty-five feet in length, together with a large quantity of the plaintiff's soil and rock, was destroyed. A witness, who had qualified as an expert on building and stone work, was allowed to testify as to the cost of building a new wall, and for this purpose gave two estimates according to different plans; and the judge gave full and explicit instructions to the jury on the question of damages. *Held,* that the defendant had no ground of exception.

TORT, in three counts, for breaking and entering the plaintiff's close in Boston and taking away soil and rock which was a part thereof, and for negligence in blasting by which the plaintiff's real estate was injured. Trial in the Superior Court, before *Bond,* J., who allowed a bill of exceptions, in substance as follows.

The plaintiff owned a lot of land with a house on it abutting upon a lot owned by the defendant. The line between the estates at the rear of the plaintiff's land was upon a great ledge from fifty to seventy-five feet high, the surface of the plaintiff's land being for the most part on the upper portion of the ledge, and that of the defendant below. The plaintiff's house was on the land when he bought it in 1870; it had no cellar below it and no foundation, and the only underpinning consisted of a brick wall about two feet high on the front of the house. There was evidence introduced by the plaintiff tending to show that in or about 1895, from the corner of the rear of his lot, a dry wall which was along about twenty-five feet of the rear boundary where the ledge was most abrupt, and some of the earth and ledge on that part of the plaintiff's lot to a depth averaging about seven feet, had been blown away by blasting done by the defendant; and that by such blasting the plaintiff's house also was damaged. A civil engineer, called as a witness by the plaintiff, and who examined the lot after the blasting, testified that there were 118 square feet of land gone from what would be there if the lot remained as it was before the blasting occurred; and that the house was thirty-four feet from the rear line.

The only witness produced by the plaintiff as to the value of the lot testified that it was worth thirty cents a square foot; that the diminution in the market value of the estate by the blasting of the rear land was $535; and that he estimated that if the estate were his own he would not have had it done for $500. The defendant's witnesses who testified on the subject put the value of the land much lower than thirty cents a foot.

Evidence was introduced by the defendant tending to show that the damage was done before he bought this lot and while a prior owner of the lot was blasting there; that at the time the defendant began to blast there was a hole, or hollow, in that corner of the plaintiff's lot where the plaintiff claimed the damage had been done; and that there was nothing in the condition of the house which could not be accounted for by old age.

John Mack, a builder, was called as a witness by the plaintiff and qualified as an expert on building and stone work. The plaintiff sought to qualify him as an expert on blasting.

In regard to his experience in and knowledge of blasting, the

witness testified that he had had about half a dozen contracts where he had blasting to do during the whole period of his being in business; that he had made a study of blasting and of the vibrations; that he knew the effect of a blast on rock as compared with the effect of a blast on earth ; that he had personally superintended four large jobs of blasting; that he blasted the cellar right under a school building while the school was in session, and did not break a light of glass in the building ; that he blasted a cellar in Brockton twenty by thirty feet and seven feet deep, of about the same nature of rock as in this place; that he blasted another cellar in Brockton seventy-five by fifty feet for a large apartment house, and about ten feet deep ; that he had a contract in Worcester where he found that half the site was of stone, and he blasted an area there twenty feet square, and five or six feet deep; and that he had some trouble with vibration, and damaged some houses near there.

He was then allowed to answer the following questions, subject to the defendant's exception :

" *Q.* Whether or not in your opinion a sudden shock or succession of shocks or jars might have caused this condition ? *A.* Yes; I should expect to find just such a condition as I found in this house from the result of a shock. — *Q.* Suppose a blast, the hole is fourteen feet deep and two inches wide, whether or not that would be called a large blast? *A.* In my opinion it is a very large blast. — *Q.* Suppose you have a hole fourteen feet deep and two inches across in diameter all the way down at the distance from the house that it would be right on the middle of the rear line as laid down on that plan, what would be the effect upon the ledge of the plaintiff — the plaintiff's lot? *A.* I can only offer this as an opinion, that the effect of a blast so deep as fourteen feet and two inches in diameter would be felt three hundred square feet in such rock as that.'

The witness also testified that he had estimated the cost of building a wall on the plaintiff's lot.   He was then asked certain questions, as to two plans according to which he had estimated the cost of building a wall, and as to the cost of the work, and as to the effect of the wall on the use of the land.   The defendant objected to the questions, contending that such evidence

had no tendency to show the true measure of damages, and also that it might turn out that the cost of such a wall would be in excess of the value of the rear corner of the lot where the plaintiff claimed the damage had been done, even if it had been sold outright instead of damaged; but the judge allowed the questions to be put; and the defendant excepted.

The witness further testified that the cost of repairing the damage alleged to be done to the plaintiff's house by reason of the blasting was one hundred dollars, and there was no other evidence as to the cost of such repairs offered by either side.

On cross-examination he testified that the wall which he had described in direct examination, and of which he had estimated the cost, was to be four feet below the earth and four feet above it, that is, eight feet from rock bed to the top of the wall; that it would take thirty-three perch of stone; and that the cost of the stone would be $1.75 per perch.

The judge instructed the jury upon the method of determining the damages as follows:

"Now, the damage to property of this kind, which it is sought in all cases of this kind to ascertain, is the difference, or the diminution, in the market value of the property. If the property, before any injury was done by the defendant, if there was any done, was worth two thousand dollars, and it was worth fifteen hundred dollars afterwards, the damage would be five hundred dollars. It is not to be figured up by saying that it will cost so much to do this or do that, but we determine it by ascertaining what the value of the property is before the injury and what it is afterwards, and that is what the plaintiff has lost. When he has got that he has been made whole. In coming to that conclusion, however, we are not to leave out of consideration entirely what it may cost to repair the damage done to the property; not that you should determine the damage at what the cost would be to make the repairs, because it might not be a reasonable thing to make the repairs necessary to restore it to what it was before. For instance, if it was necessary to build a rear wall from the bottom of the ledge up to the top, at a cost of several thousand dollars, on an estate that was not worth two thousand dollars in the first place, you would say that it would not be reasonable to go to such an expense as that, and nobody

would ever do it; some other way would be resorted to than to incur any such expense.

" There was some evidence introduced here of certain schemes that were suggested, and what it would cost to carry out those methods of repairing to some extent the damage. I admitted the evidence, not to have you consider that it was necessary to do what was suggested by either one of the plans; that is entirely for you. And it depends altogether upon the cost compared with the value of the property. If the cost is out of all proportion to the value of the property after the work is done, why, then no one would think of going into any such expenditure. For instance, to illustrate what I mean, it is said that the piazza has been cracked off from the house. Well, it might be that it would be reasonable for a person who was going to sell that property or was going to buy it, looking at it, to ascertain what it would cost to put that back again, and it might be that would be a reasonable element, and the same with the window panes; and the same way with broken plaster, if there was any caused by any wrongful acts of the defendant, what would it cost to replaster the house, or replaster it to the extent that was necessary? Now, if it was a small matter at the rear of the lot, what would be the cost to replace it should be considered; but if that expense was out of all proportion to the value of the property, you might not consider that any one would spend that amount of money upon it, because it would not be what anybody would be likely to do; it would not be a reasonable sum of money to expend for a property of that kind. I do not mean to say that you should not consider it at all. So far as you say it was reasonable that a man would want to make those repairs such as I have suggested about the house, you should consider what it would cost, but it is only such repairs as would be reasonable to have made in view of the property and the cost of the repairs.

"Now you will consider, therefore, the evidence that has been introduced with reference to the damage that has been caused to the property, the land, and the house, only by the acts of the defendant and his employees, and say what is a reasonable sum, what sum will compensate the plaintiff for the injury to his estate; that is, how much was the value, the market value, of

his estate lessened by what was done by the defendant, and such sum as the value is lessened by the acts of the defendant the plaintiff is entitled to receive."

The jury returned a verdict for the plaintiff in the sum of $250; and the defendant alleged exceptions.

*T. J. Gargan & P. M. Keating*, for the defendant.

*C. A. Drew*, for the plaintiff.

LATHROP, J. The plaintiff and the defendant owned adjoining parcels of land abutting on the rear on a high ledge, fifty or seventy-five feet high. The surface of the plaintiff's lot was mostly on the upper part of the ledge, and the defendant's below. Through the negligence of the defendant in blasting on his portion of the ledge, the plaintiff's house was injured, and a wall about twenty-five feet in length, together with one hundred and eighteen square feet of the plaintiff's soil and rock, was destroyed. The jury returned a verdict for the plaintiff for $250, and the case is brought here on exceptions to the admission of evidence.

The first question is, whether one Mack, who qualified as an expert on building and stone work, was also qualified as an expert on blasting. We are of opinion that, on the evidence stated in the bill of exceptions, it was within the power of the judge who presided in the lower court to allow him to testify as an expert. *Manning* v. *Lowell*, 173 Mass. 100.

The remaining question is whether Mack could testify as to the cost of building a new wall. For this purpose he gave two estimates, according to different plans. The objection made to this evidence is that it does not give the true measure of damages. But we are of opinion that the jury might well have found that this was the cheapest way of repairing the injury done; and that the instructions to the jury on the question of damages were so full and explicit that the defendant has no ground of exception.

*Exceptions overruled.*