HARRY C. GARLAND *vs.* JACKSON H. TOWNSEND.
SAME *vs.* ARTHUR C. WHITNEY.

Norfolk.　December 8, 1913. — March 31, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Negligence,* In construction of building.

In an action by an electrician employed by an elevator company, which had contracted with the owner of a building in process of construction to install the elevators of the building and equip them with electric lights, against a subcontractor who had agreed with the general contractor for the construction of the building to do the plastering for it, for personal injuries sustained, when the plaintiff was at work fitting a receptacle for electric lights in a freight elevator, from plaster falling into his face and eyes through the open floor of a penthouse at the top of the elevator well where the defendant's servants were at work, if it appears that the general contractor employed a general supervisor whose duty it was to see that the work of the various subcontractors was performed in the proper sequence and did not conflict, that the plastering had been delayed somewhat to enable the plaintiff's employer to complete the installation of the elevators, and that the defendant's foreman before beginning the plastering work in the penthouse was assured by the general supervisor that he was to have the exclusive use of the freight elevator well, there is no evidence of the defendant's negligence and he cannot be found to be liable for the plaintiff's injury.

In an action by the same plaintiff for the same injuries against the general contractor for the construction of the building, if it appears that before the plastering began the defendant's general supervisor assured the foreman of the subcontractor for the plastering, that he was to have the exclusive use of the elevator well, and that thereupon the plasterers were directed to begin work and the accident happened, and if the supervisor testifies that an employee of the elevator company informed him that he had finished his

work, and this is relied upon as a justification of the supervisor's order to begin the plastering, but it appears that this employee of the elevator company was not entrusted with the installation of the lights, but had been working with one or two helpers wholly outside the elevator well in erecting the gates of the elevator, there is evidence for the jury that negligence of the defendant's general supervisor was the direct cause of the plaintiff's injury.

Two ACTIONS OF TORT by the same plaintiff against different defendants for personal injuries sustained by the plaintiff on December 23, 1911, when, as an electrician in the employ of the Otis Elevator Company, he was engaged in installing a receptacle for electric lights at the top of a freight elevator in the Crosby Building, which was then in process of construction and was numbered 480 on Washington Street in Boston. Writs dated July 15, 1912.

In the Superior Court the cases were tried together before *Quinn*, J. It was admitted that the defendant Whitney was the general contractor in charge of the construction of the Crosby Building; that the defendant Townsend was a subcontractor having a contract with the defendant Whitney for the plastering of the building; that the Otis Elevator Company was a separate contractor, whose contract was with the owners of the building and not with the defendant Whitney. Its contract was to install the freight and passenger elevators in the building. The facts which could have been found upon the evidence are stated in the opinion.

The judge ordered a verdict for each of the defendants; and the plaintiff alleged exceptions.

*F. E. Bradbury,* for the plaintiff.

*J. A. Lowell,* for the defendant Townsend.

*W. H. Hitchcock,* for the defendant Whitney.

BRALEY, J. The plaintiff when at work as an electrician fitting a receptacle for light to a freight elevator at the second floor of the building, was struck in the face and his eyes injured by mortar falling from the hocks * or trowels of plasterers at work in the penthouse at the top of the elevator well. While the jury could have found that the plaintiff saw the men in the penthouse, which covered an area twice the size of the wellway, yet they further could find, that from his former experience when

---

* Square mortar boards.

working under similar conditions, as shown by his testimony, he had no reason to apprehend any danger from mortar falling in such quantities as to make his position perilous, especially as he further said, that from his point of view, he thought the canvas which covered the hoisting apparatus extended over the opening in the floor of the penthouse far enough to prevent the mortar from dropping.

But, if the question of the plaintiff's due care or assumption of risk was for the jury under *Reardon* v. *Byrne,* 195 Mass. 146, the defendants contend, that no negligence on their part is shown. The defendant Whitney, the general contractor for the erection of the building, let the contract for the plastering to the defendant Townsend, while the company for which the plaintiff worked had been hired by the owners of the building to install the elevators and equip them with electric lights. The plaintiff, of course, was not a fellow servant of the workmen employed by contractors other than his employer, and the reciprocal duties of ordinary care which each contractor while at work on the premises owed to others also engaged in the process of concurrent construction are pointed out in *O'Driscoll* v. *Faxon,* 156 Mass. 527, 541. The defendant Townsend on the evidence could not set the plasterers at work in the penthouse without taking reasonable precautions to ascertain whether the men still were employed in installing the elevators. It is obvious, that, if not warned, they might be injured by falling plaster, which to some extent during application must drop from the hocks and trowels. But the uncontroverted evidence introduced by the plaintiff showed that one Bowman, employed by Whitney as general superintendent and supervisor of construction, "had charge of the construction and seeing that the plans were carried out by all of the subcontractors, that the work of the various contractors followed each other in proper sequence, that the work was right in the manner of supervision. In the case of those subcontractors who were not subcontractors of Mr. Whitney, he said his supervision was in relation to their work with other work to see that the two conformed and were correct." The plastering had been somewhat delayed for the purpose of enabling the contractor for the elevators to finish the installation, and, before beginning to plaster, Bowman, whose orders Townsend obeyed, assured Town-

send's foreman that he was to have the exclusive use of the wellway, and as a result the plasterers were directed to begin. The accident happened shortly after they began, and, under this positive assurance and direction from one charged with the general oversight of all departments, this defendant, who is not shown to have known of the plaintiff's presence, had no reason to anticipate that further work on the elevator was to be done contemporaneously. It is plain that he is not chargeable with any negligence, and the plaintiff must fail in the first action.

The defendant Whitney, however, is not as matter of law exonerated, even if the plastering was done by an independent contractor lawfully employed. *Woodman* v. *Metropolitan Railroad,* 149 Mass. 335, 339. *Poor* v. *Sears,* 154 Mass. 539, 547, 548. *Burke* v. *Hodge,* 211 Mass. 156. The jury could find that, if the order had not been given by Bowman, the work would not have been begun, or that before beginning the subcontractor would have taken suitable precautions to protect the plaintiff at work below. This subcontractor for the plastering, having been called as a witness by the plaintiff, testified to conversations before the accident with not only the supervisor or superintendent of construction, but the foreman of the elevator company, in which he requested them to finish their work to a point where the wellway could be abandoned long enough for the plasterers to take possession and complete the plastering, and that he was told by the supervisor that the elevator company was through with the wellway. The supervisor and foremen each denied that such an arrangement was made or that any understanding was reached that the employees of the elevator company were to keep out of any portion of the building when another set of workmen were employed. But, as Bowman further testified that one Remick, an employee of the elevator company, informed him that he was through with his work, this is relied on as a justification for the order to plaster. The representatives of the elevator company, with the exception of Remick, who was not called as a witness, all testified, and their evidence in effect was that Remick had not been entrusted with supervision or the installation of the lights, but only erected the gates to the elevator, having one or two helpers with him. The jury, who were to pass upon the credibility of the witnesses, would have been warranted in finding that Bow-

man knew Remick did not have general charge of the construction of the elevators as well as that of the erection of the gates, so that Remick's remark was not of itself an assurance that the lighting equipment had been completed and that no further work by the plaintiff in the elevator well was necessary. Or in other words, it could be found that Bowman acted and relied on information from an employee, whose work lay entirely outside of the well, when he ought to have obtained accurate knowledge of the exact situation. The defendant Whitney was in control and possession of the premises in so far as was necessary for the performance of his contract. But the occupation was not exclusive, as the elevator company under its contract with the owners also was expected to use them, until the electrical installation and equipment had been completed. *Gile* v. *J. W. Bishop Co.* 184 Mass. 413, 415. *Grier* v. *Guarino,* 214 Mass. 411. The duty devolved upon that defendant so to arrange the performance of the work, in so far as reasonably possible, that workmen of the elevator company should not be exposed to unnecessary danger without any warning through orders given to subcontractors who in different industrial capacities might occupy the same portion of the premises simultaneously. *Earle* v. *Hall,* 2 Met. 353, 357, 358.

The jury should have been permitted under suitable instructions to pass upon the question, whether under all the circumstances the defendant Whitney before directing the subcontractor to proceed with the plastering took reasonable precautions for the protection of workmen who, if employed in equipping the elevator, might be exposed to injury. *Gile* v. *J. W. Bishop Co.* 184 Mass. 413. If they found that he acted negligently, a further finding, that his negligence was the primary cause of the accident, would have been warranted. *Hill* v. *Winsor,* 118 Mass. 251, 259. *Wagner* v. *Boston Elevated Railway,* 188 Mass. 437. *Burke* v. *Hodge,* 211 Mass. 156.

The exceptions in the first case are overruled, but those in the second case must be sustained.

*So ordered.*