MARY T. NUGENT, administratrix, *vs.* BOSTON CONSOLIDATED GAS COMPANY.

SAME *vs.* EDISON ELECTRIC ILLUMINATING COMPANY OF BOSTON.

Suffolk.    November 19, 1920. — March 18, 1921.

Present: RUGG, C. J., BRALEY, CROSBY, & PIERCE, JJ.

*Negligence,* In construction and maintenance of conduit under highway, Independent contractor, Of gas company, Causing death. *Joint Tortfeasor. Practice, Civil,* Actions tried together, Exceptions. *Verdict. Evidence,* Opinion: expert; Relevancy and materiality. *Damages,* In tort. *Interest. Clerk of Courts.*

At the trial of an action by an administrator against an electric company for the causing of conscious suffering and death of the plaintiff's intestate resulting from an explosion of gas which had escaped by reason of what the plaintiff alleged was negligent construction and maintenance of a concrete conduit under a highway and above a junction of gas mains, there was evidence tending to show that the conduit was built six or seven years before the explosion; that it weighed about two and one quarter tons and rested directly over and within six inches of the gas pipes, under which earth had been excavated to some degree and back filled insufficiently by the electric company; that it was not a solid mass of bonding, the concrete having been moulded in layers, leav-

ing seams; that under the junction of the gas mains the electric company had placed a joist; that, after the installation of the conduit, the street above had been resurfaced and paved and street car tracks and street car traffic installed; that the conduit had slowly settled and had transmitted to the gas mains the load of passing street cars with vibrations, especially when the ground was frozen, in such a way as in the circumstances to bring upon the mains an unequal vibrating strain tending to pry them apart. *Held,* that

(1) A finding was warranted that the only reasonable and satisfactory explanation of the leakage of gas and the consequent explosion was a break in the gas pipe due to the construction and maintenance of the conduit;

(2) A finding was warranted that, in the exercise of ordinary care, the electric company should have foreseen that, if gas thus was caused to escape, it might be ignited; upon which finding the electric company should be held liable, whether the gas was ignited by a natural cause or by some person in the employ of the company owning and controlling the gas mains or by a traveller.

At the trial above described, it appeared that the conduit was constructed and installed by a construction company in accordance with plans and specifications approved by municipal authorities and under a contract with the electric company which contained provisions that the construction company should take its instructions from the superintendent of the street engineering department of the electric company, acting either directly or through his properly authorized agents, such superintendent to be the referee to decide all disputes between the construction company and the electric company relating to the mode and details of construction and installation of the conduit and, by express provision, underground obstructions and the supporting of gas pipes to be entirely under his supervision and control. *Held,* that

(3) The construction company built the conduit in the right and under the control of the electric company;

(4) The nature and location of the conduit being such that, if the work of installing it was done faultily, the safety and welfare of persons lawfully in the public way would be put in jeopardy, the electric company was liable for personal injury to and death of a traveller on the highway resulting from negligent construction of the conduit as a proximate cause;

(5) The electric company, having placed its conduit in a public way, was bound thereafter to use due care in its maintenance not only under the conditions of travel existing when the conduit was built, but also under those coming into existence afterwards, whether through the resurfacing or the paving of the street or the establishment of the car tracks.

The action against the electric company above described was tried at the same time with an action by the same plaintiff against the gas company for the causing of conscious suffering and death of the intestate, the plaintiff alleging therein that the gas which exploded "was allowed to escape through the negligence of" the gas company, "its agents or servants." The electric company requested rulings to the effect that the gas company was liable by reason of negligence on its part; rulings to the effect that the gas company was liable and the electric company was not; rulings to the effect that the gas company was a trespasser and was unlawfully maintaining its pipes in the highway, and rulings to the effect that such unlawful maintenance of pipes made the gas company solely liable. The rulings were refused subject to exceptions by the electric company. *Held,* that

(6) Neither admissions of the gas company, proof of its negligence or unauthorized acts nor its responsibility therefor were a defence available to the electric company;

(7) A finding was warranted that the defendants in the two actions were joint tortfeasors, in which case neither could escape liability for its own negligence because of negligence of the other;

(8) Even if the gas company was a trespasser and unlawfully using the highway, the electric company was not excused from the consequences of its own negligence if that was proved to the satisfaction of the jury;

(9) The actions being separate, although tried together, the electric company could not complain of refusals to give rulings bearing upon the liability of the gas company nor of the giving of rulings which it contended were too favorable to that company.

At the trial of the action against the electric company above described, there was evidence tending to show that, in the construction of the conduit, there were deviations from the plans which had been approved by the municipal authorities, and the judge instructed the jury that such deviations would not be evidence of negligence unless they were of a material and substantial character actually contributing to the escape of gas. *Held*, that the instruction was correct.

At the trial together of the actions above described, a claim agent of the gas company, who had been called by the plaintiff, was permitted to testify in cross-examination by the gas company, that he had been instructed "many years ago" to investigate and ascertain the cause of leaks in gas pipes for the purpose of making repairs, and that for twenty-nine years, whenever leaks were reported, he made such investigations, that he had investigated the cause of the explosion in question, was at the manhole shortly after it occurred, saw the employees of the gas company excavating and examined the cracks in the gas pipe underneath the conduit and the construction of the conduit and its location, that resting of the ties of the street railway on six inches of frozen earth, all pressing upon the conduit, and the vibrations caused by the passing cars would be sufficient to cause the break. *Held*, that a finding was warranted that the witness was qualified as an expert; and that his testimony was competent.

An exception by the electric company to the admission of testimony offered by the gas company at the trial above described, that, whenever notice was received from the city that a street where gas mains were laid was to be resurfaced, its practice was "to bar over each and every joint, and if there should be any trace of gas an opening is made and the joint driven up," must be overruled, as the evidence was admissible as between the gas company and the plaintiff on the question of its negligence.

An exception to the admission of evidence at a trial will not be sustained where it appeared to be admissible when it was offered and admitted, although afterwards it became apparent that it was inadmissible because it was hearsay, the proper method for the party harmed by such evidence to adopt in protecting his rights being by a motion to strike out the evidence when its inadmissibility was disclosed.

At the trial above described, testimony of experts called by the plaintiff to the effect that the condition above described "caused the break" and that the cause of the break was the "weight of the conduit on top of the cross, the loose

ground under the cross, and the settling and the vibration," was competent and admissible.

It was immaterial, in the action against the electric company, whether that defendant's property had been damaged by the explosion.

Having properly instructed the jury, at the trial of the actions above described, that, if they found for the plaintiff in both actions upon the counts for conscious suffering, they should find the same amount in each action, and that they should not "worry or feel at all disturbed that there will be any collection of that money against both, that both will have to pay it. It can't be done . . . the law will see to it there is only one payment of the sum," the judge could not be required to add, "it is important for the jury to know that the plaintiff may not collect the amounts of the verdicts from both defendants."

At the trial together of two actions under R. L. c. 171, § 2, as amended by St. 1907, c. 375, each against a separate defendant by the same administrator for the causing of the death of the plaintiff's intestate, if both defendants are found liable, the question of the degree of culpability, which under the statute is the standard for determining the amount of the verdicts, is for the jury and, while the amount of the verdict in each case cannot exceed $10,000, the sum of the two verdicts may exceed that sum.

Exceptions by the defendant, in one of the two actions tried together as above described, to a refusal of the judge to rule that if verdicts were returned and went to judgment, the plaintiff would not be permitted to collect both judgments, and that the total of the penalties assessed could not "exceed the amount fixed by the statute, to wit, $10,000," and that it was important the jury should be so instructed, must be overruled.

At the trial together of the actions for causing death above described, the jury in passing upon the degree of culpability could not apportion the penalty between the defendants nor lessen nor increase the amount in either case on any theory of equalization, although the plaintiff could collect only $10,000, if the verdicts were in the aggregate in excess of $10,000 and the actions went to judgment.

The question of satisfaction of judgments to be entered on the verdicts in the actions above described was not a proper one for consideration by the jury in assessing damages under the statute.

In the action above described, the jury found for the plaintiff on the count for conscious suffering in each action in the sum of $1,000, on the count for causing death in the action against the gas company in the sum of $8,000 and on the corresponding count in the action against the electric company in the sum of $10,000. After the return of the verdicts and before judgment, the plaintiff moved in each action that under St. 1913, c. 290, interest be added to the amount of the verdicts. The motions were allowed. *Held*, that the motions properly were allowed.

*It seems* that, under St. 1913, c. 290, a verdict first should be returned and recorded and interest thereon from the date of the writ to the date of the verdict then should be added by the clerk.

Two ACTIONS OF TORT, the first as amended being against the Boston Consolidated Gas Company as the sole defendant, and the second against the Edison Electric Illuminating Company of

Boston as the sole defendant, both being brought by the administratrix of the estate of Thomas A. Nugent, and the declarations in both being in two counts, the first count for conscious suffering and the second for the negligent causing of the death of the plaintiff's intestate when a manhole of the electric company was blown off at the corner of K Street and Broadway, in that part of Boston called South Boston, by reason of an explosion of gas escaping from a leak in a gas main at the corner of L Street and Third Street, it being alleged in the declaration in the first action that the gas which exploded "was allowed to escape through the negligence of the" gas company, "its agents or servants," and in the declaration in the second action that the "gas pipes were cracked and the illuminating gas caused to escape through the negligence of the" electric company, "its agents or servants, which had negligently installed and maintained a cement or concrete conduit, for the carrying of its ducts or wires, of large size and great weight at the corner of Third and L Streets in said South Boston in such a manner that it rested directly upon the said gas pipes and was above the frost line, so that the weight of said conduit and the action of the frost thereon and the vibration caused by passing wagons, automobiles and electric cars on the surface of the street caused the crack in said pipes, and the gas thus caused to escape seeped or percolated into the conduits and manholes maintained by the defendant in the vicinity of said K, Third and L Streets and Broadway, was ignited and exploded." Writs dated, respectively, May 23, 1917, and July 3, 1918.

In the Superior Court, the actions were tried together before *Fessenden*, J. Material evidence is described in the opinion. The trial of the actions occupied more than five court weeks.

The defendant gas company in its bill of exceptions stated that the evidence "warranted a submission of the case to the jury, both on the question of the due care of the plaintiff's intestate and the negligence of the defendant." It excepted only to a refusal of the judge to rule and instruct the jury that "if the jury find against both the Edison Electric Illuminating Company and the Boston Consolidated Gas Company on the counts in the plaintiff's declarations for the death of the plaintiff's intestate, the total amount awarded under these counts cannot exceed $10,000," and to an instruction to the effect that the

jury were not obliged to limit the amount of their verdict in either case upon the count for causing death so that the aggregate of the verdicts in both cases upon those counts should be $10,000 and no more, the judge also stating, "If it strikes you that the culpability is greater as to one of the parties, and if the aggregate exceeds $10,000, the aggregate, you may so award. You cannot award more than $10,000 in each case; in any one case, you can't exceed $10,000."

The defendant in the second case moved that a verdict be ordered in its favor. The motion was denied. It then presented fifty-seven requests for rulings and instructions. Of these, the first four were to the effect that, if the electric company employed an independent contractor to do the entire work of constructing its conduits, any negligence predicated (1) "upon the manner or method of construction," or (2) "upon the situation, or location of such conduits," or (3) "upon the fact that the conduits were placed in close proximity to or in contact with pipes of the gas company" would be negligence of the independent contractor and not of the electric company; and that, if the position, situation or location in which the conduits were to be constructed was to be "approved by the wire commissioner of the city of Boston or as determined by the independent contractor, any negligence predicated upon the position, situation or location of such conduits as regards gas pipes cannot be negligence of the" electric company.

Requests numbered 5, 14 and 21 in substance asked for rulings to the effect that the electric company could not be held liable by reason of the fact that the situation about its conduits was made more dangerous, after they were constructed, by changes in the weight of paving, the installation of street railway tracks and street railway traffic.

Requests numbered 6–10, 18–20, 35, and 44–48 in substance sought rulings imposing liability upon the gas company by reason of negligence on its part; those numbered 15, 16 and 27 sought rulings to the effect that the gas company was liable and the electric company was not; and those numbered 37–43, 49–51, and 57, were to the effect that on the evidence the gas company was a trespasser, unlawfully maintaining pipes under the highway at the place of the leakage, requests numbered 42 and 43 asking for

rulings to the effect that such conduct on the part of the gas company made it solely liable.

Request numbered 17 was for a ruling that there "was no duty imposed upon the defendant Edison Electric Illuminating Company, upon the report of any leak of gas in the streets in question, to dig down into the streets or take other action to discover any reported leak of gas even if eventually it should turn out that the leaking of gas was caused by a breaking of a gas pipe by some negligent act of the defendant Edison Electric Illuminating Company."

Requests numbered 11–13 and 36 were for rulings to the effect that the electric company was under obligation only to see that its conduits were constructed in accordance with permission given by public authorities, and that it had no right in the highway except such as was so given.

Request numbered 23 was for a ruling, "The party who has the last opportunity of avoiding an accident is not excused by the negligence of any one else. His negligence and not that of the one first in fault is the proximate cause of the injury;" and those numbered 24–26 were for rulings to the effect that, if the gas company "had the last opportunity of preventing the explosion which actually occurred in the cases at bar and was negligent when given such last opportunity in not preventing the explosion," its negligence and not negligence of the electric company was the proximate cause of the injury to the plaintiff's intestate.

Requests numbered 52–56 related to the bearing of particular phases of the evidence upon the question of the liability of the electric company.

Requests numbered 28–34 were as follows:

"28. If the jury find that both defendants are liable, their verdicts for conscious suffering, if any, must be in the same amounts against both defendants, but it is important for the jury to know that the plaintiff may not collect the amounts of the verdicts from both defendants.

"29. If the jury find that both defendants are liable, under the counts for death the jury are to assess damages against each defendant according to the degree of culpability, but it is important for them to know that the plaintiff cannot recover the full amounts of the damages thus assessed against both defendants.

"30. When two or more persons either jointly or concurrently cause damage to another, such other may recover damages against all the wrongdoers in the same amounts, but such other may not collect the amount of the verdicts from all but may get satisfaction of only one of such verdicts.

"31. If the jury should bring in verdicts for the plaintiff upon the death counts both against the defendant Gas Company and the defendant Edison Electric Illuminating Company and those verdicts stood and went to judgment, the plaintiff would not be permitted to collect judgments in both cases upon the death counts. In such case, if there was any difference in the verdicts of the jury upon the death counts, if the jury gave a larger verdict in one case than they did in the other upon such death counts, it may be very natural to suppose that she would content herself with the larger judgment and let the other go, but she could not collect both, and that is important for the jury to know.

"32. In the event that upon the counts for death the jury find verdicts for the plaintiff against both defendants, the sum total of such verdicts upon the death counts cannot exceed the sum of ten thousand dollars.

"33. Even though under the terms of the death statute the amount of the penalty imposed upon a defendant depends in each case upon the degree of culpability upon the part of the particular defendant in each action and in no way depends upon the fact that there is another defendant also liable to pay a similar penalty for negligently causing the intestate's death, even though the negligent act of the other defendant was a cause of the death concurrent with the negligent act of the defendant in the action in question, the sum total of the penalties thus assessed cannot exceed the amount fixed by the statute, to wit: ten thousand dollars.

"34. The plaintiff is not entitled upon the death counts to have each action against each defendant for negligently causing the intestate's death decided upon its own merits without regard to the fact that another action was pending against another defendant based upon the same facts."

On the subject matter of the twenty-eighth request, the judge charged the jury, "on that first count in each case, if you find for the plaintiff, you must assess the same amount in each case. . . .

So in this case, whatever sum you find for the plaintiff, if you find for her, the sum will be what was reasonable compensation for him, for the injuries that he received — I, mean the deceased, the boy — what was reasonable compensation. Having ascertained that, if you find as against both defendants, you will put that same amount in each case, and don't worry or feel at all disturbed that there will be any collection of that money against both, that both will have to pay it. It can't be done. Put it in each case and then the law will see to it there is only one payment of the sum."

Exceptions taken to the charge of the judge are described in the opinion. The jury found for the plaintiff in each case on the count for conscious suffering in the sum of $1,000; and for the plaintiff on the counts for causing death, in the action against the gas company in the sum of $8,000, and in the action against the electric company in the sum of $10,000.

After the return of the verdicts, the plaintiff, suggesting in each action "that interest was not added to the verdict rendered therein under the terms of St. 1913, c. 290," moved "that interest be added thereto in accordance with the provisions of said statute," and the motions were allowed.

Both defendants alleged exceptions.

St. 1913, c. 290, § 1, is as follows: "In any suit at law hereafter brought in which a verdict is given for pecuniary damages for the death, with or without conscious suffering, of any person, whether or not such person was in the employ of the defendant whose negligence is determined to have been the cause of death, there shall be added to the amount of the verdict interest thereon from the date of the writ."

*W. I. Badger, Jr.,* for the Boston Consolidated Gas Company.

*E. C. Stone,* for the Edison Electric Illuminating Company.

*F. W. Mansfield, (E. R. Mansfield* with him,) for the plaintiff.

BRALEY, J. The plaintiff's intestate, a boy fourteen years of age, whose due care is not questioned, while standing in the street was blown into the branches of a nearby tree by an explosion of illuminating gas, where he clung or hung for a few minutes, and then dropped to the ground, either lifeless, or unconscious, and was pronounced dead by the medical examiner upon his arrival. The declaration in each action is in two counts, one for conscious

suffering, and one for death under R. L. c. 171, § 2, as amended by St. 1907, c. 375, and, the jury having returned a verdict for the plaintiff on each count, the cases are here on the exceptions of the defendants. But as the contentions of the Boston Consolidated Gas Company relate solely to damages and to the allowance of interest on the verdict under the count for death, questions which are common to both cases, we shall first consider the Edison Electric Illuminating Company's exceptions to the refusal of the presiding judge to direct a verdict for the company, and his denial of the rulings requested, and to certain portions of the instructions, and to the admission and exclusion of evidence.

It appeared on abundant evidence that for a long time prior to the explosion a strong persistent odor of illuminating gas had been prevalent in the vicinity of the accident. The facts of the explosion, even if the cause of ignition never has been ascertained, and that this defendant owned and maintained in the vicinity cement or concrete conduits, some thirteen in number, with manholes, the covers of which were blown off, were uncontroverted. The jury could find that in one of these manholes gas had accumulated from a leak in a ruptured gas pipe directly under and in contact with the conduit, which by reason of its location and use, as fully described in the record, was so built as to extend diagonally across the gas pipes which were united at this point by a "four way connection" referred to throughout the trial as a "cross." The plaintiff contends that the dangerous and unsafe condition of the gas pipe was caused by the improper construction and negligent maintenance of the conduit. It had been put in some six or seven years before the accident, and after its construction the street had been resurfaced and paved and car tracks installed, over which cars were operated. The jury could find that the conduit, weighing about two and one quarter tons, had been so built as to rest directly over and within six inches of the gas pipes, under which earth had been more or less excavated, and that, instead of being a solid mass of bonding, the concrete had been moulded in layers leaving seams. It also could be found that a joist had been placed under the middle of the cross by the Edison company and that the conduit as it slowly settled transmitted the load of passing street cars, while its continuous vibration, especially when the ground was frozen, caused an unequal subsidence, and if the

conduit moved laterally the pipes below would vibrate correspondingly. If the conduit sank unevenly, the unequal strain on the pipes would tend to produce a rupture, and, the pipes being supported in the middle by the cross, any weight on either side of the point would act as a lever prying them apart. And as the jury further could say a trench had been dug by this defendant under the cross, and insufficiently back filled, "it would have less supporting power and would settle more readily under a load, . . . than if the conduit had been separated a little from the gas pipe; it would have been better construction but it would not be safe then because the intervening space filled with earth would not distribute the load sufficiently to arch over the pipe which would be the purpose of earth covering — to give it a rigid effect," and that about "twelve inches was usually considered a safe distance to have between pipes and a conduit such as the one in question; that it depended upon the character of the soil," and that "six inches would be getting pretty dangerous." A finding that gas escaped from a break in the pipe caused in the manner just referred to, and that it was the only reasonable and satisfactory explanation of the leakage, and consequent explosion, was warranted. *Koplan* v. *Boston Gas Light Co.* 177 Mass. 15.

The defendant however urges, that, the work of building and placing the conduit having been performed by an independent contractor in accordance with plans and specifications approved by the wire department of the city, it is absolved from all liability. But even if permitted or licensed for its own use and benefit to build and maintain the conduit which otherwise would have been a nuisance, it could be found on the evidence that the defendant knew the street was being concurrently used by the public to which it owed the duty of due care not only in construction but of maintenance. *Gorham* v. *Gross,* 125 Mass. 232. *Igo* v. *Cambridge,* 208 Mass. 571, 576. And this is true even if the location and the method of building had been approved by the commission. *Kuhlen* v. *Boston & Northern Street Railway,* 193 Mass. 341. By the terms of the contract the contractor was to take its instructions from "the Supt. of the St. Engineering Dept. of the Company acting either directly or through his properly authorized agents; such agents acting within the scope of the particular duties intrusted to them." The superintendent also was the

referee to decide all disputes between the contractor and the company, relating to the mode and details of construction and of installation of the conduit, and, by express reference, underground obstructions and the supporting of gas pipes were entirely under his supervision and control. It is settled that where as in the present case the contractor does the work in the right of the employer who retains control, and where its nature and location is such that if faultily performed the safety and welfare of persons lawfully in the street will be put in jeopardy, and injury results, the employer under whose instrumentality the work has been done is responsible. *Woodman* v. *Metropolitan Railroad,* 149 Mass. 335, 340. *Blessington* v. *Boston,* 153 Mass. 409. *Pye* v. *Faxon,* 156 Mass. 471, 474. *Flynn* v. *Butler,* 189 Mass. 377, 388. *Boucher* v. *New York, New Haven & Hartford Railroad,* 196 Mass. 355, 359, 360. *Garland* v. *Townsend,* 217 Mass. 297, 300, 301. *Hall* v. *Henry Thayer & Co.* 225 Mass. 151, 154.

The defendant, if through its negligence gas accumulated and remained in the manhole, is liable for the natural and probable consequences. The jury were to determine whether in the exercise of ordinary care it should have foreseen that, if gas escaped, it might be ignited by a natural cause or by some person whether in the employment of the gas company, or a traveller, even if such person or the company also might be liable for negligence. *Feneff* v. *Boston & Maine Railroad,* 196 Mass. 575. The plaintiff's action against this defendant is on grounds entirely independent of her action against the gas company, and the admissions of that company, or proof of its negligence, or unauthorized acts, or responsibility therefor to the intestate is not a defence. *Koplan* v. *Boston Gas Light Co.* 177 Mass. 15.

The defendant, having placed its conduit in a public way, was bound thereafter to use due care in maintenance not only under the conditions of travel existing when the conduit was built but coming into existence afterwards, whether by resurfacing or paving of the street, or the establishment of car tracks. *Derry* v. *Flitner,* 118 Mass. 131, 134. And the instructions that "a company which contracts to have work done, if that work is of a nature which will cause danger to outside persons, persons who are not parties to the contract, then it is the duty of the party, not the constructing party, but the other party, to use reasonable care

to see that measures are taken which will not endanger the safety of third persons, the public," and "after it is completed, there should be reasonable care used in the maintenance of it, . . . reasonable precautions to see that, if it is a source of danger there, that third parties, outside parties, shall not receive harm or injury. It is a question of reasonable care," accurately and clearly stated the law.

The jury doubtless could find that in the construction of the conduit there were deviations from the plan as approved. But the judge correctly said that deviations would not be evidence of negligence unless they were of a material and substantial character actually contributing to the escape of gas. *Grier* v. *Guarino,* 214 Mass. 411. The violation of a statute or ordinance is only evidence of negligence for the jury. It is not conclusive. *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580.

It being plain that, having been laid and maintained in the street without the permission of the city, the gas pipes constituted a nuisance, the defendant urges that the negligence of the gas company prevents recovery, even if its own negligence may have contributed to the injury and death of the intestate. The defendants however could be found to be concurrent tortfeasors, and under our decisions could be sued jointly or severally for conscious suffering. *Feneff* v. *Boston & Maine Railroad,* 196 Mass. 575, 580, 581. *Oulighan* v. *Butler,* 189 Mass. 287, 293. "If each contributes to the wrong . . . the proximate cause is the wrongful act in which they concurrently participate, whether the result causes instantaneous death, or injuries which the sufferer survives." *Brown* v. *Thayer,* 212 Mass. 392, 397. But by reason of the statute the penalty can only be assessed in separate actions. *Brown* v. *Thayer,* 212 Mass. 392, 399. The case of *Black* v. *New York, New Haven & Hartford Railroad,* 193 Mass. 448, is not applicable to any question raised by the record for reasons pointed out in the recent case of *Bilodeau* v. *Fitchburg & Leominster Street Railway,* 236 Mass. 526. The defendant cannot escape liability for its own negligence because of the negligence of a concurrent wrongdoer. *Eaton* v. *Boston & Lowell Railroad,* 11 Allen, 500, 505. And the instructions in substance that even if the gas company was a trespasser the defendant was not excused from the consequences of its own negligence if proved to the satisfaction of

the jury, and the illustrations used by the judge were unexceptionable. *Hogner* v. *Boston Elevated Railway*, 198 Mass. 260. *Leahy* v. *Standard Oil Co. of New York*, 224 Mass. 352. *Draper* v. *Cotting*, 231 Mass. 51.

The actions moreover are not between the defendants to determine which company is the primary wrongdoer, but between the plaintiff and the companies sued severally, and, if the rulings were correct upon the issues between the plaintiff and this defendant, it has no ground of complaint to the refusals of the judge to rule as to the liability of the gas company, or of rulings which it deemed too favorable to that company. "If both defendants contributed to the accident, the jury could not single out one as the person to blame." *Corey* v. *Havener*, 182 Mass. 250, 252. *Koplan* v. *Boston Gas Light Co.* 177 Mass. 15, 28.

The motion for a directed verdict was rightly refused. The first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, thirty-fourth, thirty-fifth, thirty-sixth, thirty-seventh, thirty-eighth, thirty-ninth, fortieth, forty-first, forty-second, forty-third, forty-fourth, forty-fifth, forty-sixth, forty-seventh, forty-eighth, forty-ninth, fiftieth, fifty-first, fifty-second, fifty-third, fifty-fourth, fifty-fifth, fifty-sixth, and fifty-seventh requests, in so far as they correctly state propositions of law were sufficiently covered by the instructions, and the instructions to which exceptions were taken when read with the context were adequate statements of the law applicable to the case.

The evidence of Barker, a witness called by the plaintiff, to which the defendant excepted, while elicited in cross-examination by counsel for the gas company, is not shown to have been improperly admitted. His experience as the "claims" agent of the gas company, instructed "many years ago" to investigate and ascertain the cause of leaks in gas pipes for the purpose of making repairs, and that for nearly twenty-nine years whenever leaks were reported he made such investigations, and had investigated the cause of the explosion, and was at the manhole shortly after it occurred, and saw the employees of the gas company excavating,

and examined the cracks in the pipe underneath the conduit, and the construction of the conduit and its location, qualified him in the discretion of the presiding judge to testify, that the ties of the railway resting on six inches of frozen earth, all pressing upon the conduit, with the vibration caused by the passing cars would be sufficient to cause the break. *Commonwealth* v. *Thompson,* 159 Mass. 56, 58, 59. *Commonwealth* v. *Adams,* 160 Mass. 310. *Childs* v. *O'Leary,* 174 Mass. 111. *Gomes* v. *New Bedford Cordage Co.* 187 Mass. 124. *Carroll* v. *Boston Elevated Railway,* 200 Mass. 527.

The testimony offered by the gas company that, whenever notice was received from the city that a street where gas mains were laid was to be resurfaced, its practice was "we bar over each and every joint, and if there should be any trace of gas an opening is made and the joint driven up," was admissible as between it and the plaintiff on the question of the gas company's negligence in failing to discover the leak after the street was resurfaced and paved. *Cook* v. *Rider,* 16 Pick. 186. *Dorman* v. *Kane,* 5 Allen, 38, 40. *Commonwealth* v. *Duprey,* 180 Mass. 523. *Emery* v. *Boston Marine Ins. Co.* 138 Mass. 398, 410. *Powers* v. *Boston Gas Light Co.* 158 Mass. 257, 260. The defendant, as we have said, seems to overlook the right of the gas company to meet as far as possible the plaintiff's evidence of its negligence even if in so doing the Edison Company might be adversely affected. The Edison Company would be sufficiently protected by asking the judge to instruct the jury to restrict such evidence as if the gas company were the sole defendant.

The evidence of McMahan, an inspector of the wire department, that the work of putting in the conduit was done under the direction of the engineering department of the Edison Company, was apparently admissible when first offered by the gas company. If later it appeared that, not having been present, his evidence was hearsay, the defendant should have moved to have it struck out. *Morrison* v. *Holder,* 214 Mass. 366, 369.

The testimony of Gow, the plaintiff's expert, that the conditions which he described and which the jury could find would "account for such a break and that in his opinion they did cause the break," was admissible for reasons sufficiently stated, notwithstanding the defendant's contention that, the work having been done by

an independent contractor with the approval of the public author-
ities, his evidence was irrelevant.

The evidence of Hilton, admitted to be qualified to give an
opinion, that the cause of the break was the "weight of the con-
duit on top of the cross, the loose ground under the cross, and the
settling and vibration," was properly admitted. It was competent
on the issue of the defendant's negligence.

It also was immaterial whether the defendant's property had
been damaged by the explosion. Its own pecuniary loss could not
mitigate either the damages or the penalty. The ruling limiting
the evidence to proof that a very substantial damage had been
done was sufficiently favorable.

The measure of recovery is the only remaining question. While
for convenience the cases were tried together, the plaintiff had the
right to pursue each defendant as if the trials had been separate
and before different juries.

The count for conscious suffering could be joined with the count
for death in the same action, although each defendant was liable
only for its own negligence, or according to the degree of its own
culpability without any regard whatever to the negligence or
degree of culpability of the defendant in the other action.
*Bartley* v. *Boston & Northern Street Railway,* 198 Mass. 163.
*Oulighan* v. *Butler, supra.*

The judge gave to the jury the proper rule by which compen-
sation for conscious suffering could be recovered, and the basis
on which the assessment should be made. He was not required
to do more. It is the satisfaction of the judgment against a joint
or concurrent tortfeasor, not the recovery of a verdict against
him which bars an action against the other wrongdoer. *Oulighan*
v. *Butler,* 189 Mass. 287, 293. *Feneff* v. *Boston & Maine Rail-
road,* 196 Mass. 575. *Lovejoy* v. *Murray,* 3 Wall. 1.

The judge properly refused to give the request of the gas com-
pany, that "if the jury should find against both the Edison
Electric Illuminating Company and the Boston Consolidated Gas
Company on the counts in the plaintiff's declaration for the death
of the plaintiff's intestate, the total amount awarded under these
counts cannot exceed $10,000," and the Edison Company's twen-
ty-ninth, thirtieth, thirty-first, thirty-second and thirty-third re-
quests, that if verdicts were returned and went to judgment the

plaintiff would not be permitted to collect both judgments, and that the total of the penalties assessed could not "exceed the amount fixed by the statute, to wit: $10,000," and that it was important the jury should be so instructed. The degree of culpability as previously stated was for the jury, and where two or more are found liable the sum of the verdicts may exceed the stated maximum. The jury were accurately told that they were "not obliged to limit the amount so that the aggregate of both should be $10,000 and no more." *Brown* v. *Thayer*, 212 Mass. 392. The action however for death is given by statute. The Legislature has fixed the maximum penalty which when satisfied must be deemed the limit of recovery for the loss of the life in question. If in cases of conscious suffering against two or more defendants there is but one wrong to be compensated, so there is but one maximum penalty where death ensues, the satisfaction of which is all the statute permits. As was said in *D'Almeida* v. *Boott Mills,* and *D'Almeida* v. *Boston & Maine Railroad,* 209 Mass. 81, where the plaintiff recovered against each for the loss of life of the intestate, that while the plaintiff was entitled to maintain the actions against each or all who contributed to the death of the intestate there could be but one satisfaction in damages. We are not aware that this statement of law has been overturned in the prolonged litigation growing out of the judgments entered in those cases. See *Boott Mills* v. *Boston & Maine Railroad,* 218 Mass. 582; *Boston & Maine Railroad* v. *D'Almeida,* 221 Mass. 380; *D'Almeida* v. *Boston & Maine Railroad,* 224 Mass. 452. The jury in passing upon the degree of culpability in the cases at bar could not apportion the penalty between the defendants, or lessen or increase the amount in either case on any theory of equalization, although the plaintiff could collect only $10,000, if the verdicts, which are respectively for $8,000, and $10,000, went to judgment. The question of satisfaction of the judgments in whole or in part does not enter into nor bear upon the issue or degree of culpability, or the amount of the assessment, which were the only questions for their consideration. If the plaintiff endeavors to obtain more than $10,000, the judgment debtor aggrieved by the excessive levy has an ample remedy by injunctive relief. *Brooks* v. *Twitchell,* 182 Mass. 443.

The plaintiff's motions that interest from the date of the writ

be added to the amount of each verdict for death were rightly allowed. By St. 1913, c. 290, § 1, interest from the date of the writ is to be added to the amount of the verdict "for pecuniary damages" where death ensues with or without conscious suffering. The words of the statute are to be taken in their ordinary sense. It is plain that interest follows upon the verdict, but forms no part of it. A verdict is first to be returned and recorded, and interest thereon is to be added by the clerk from the date of the writ to the date of the verdict, and this amount bears interest to the date of entering the judgment upon which execution issues. R. L. c. 177, § 8. G. L. c. 235, § 8. *Jackson* v. *Brockton*, 182 Mass. 26. In civil cases at common law judgment was entered on motion, *Gardner* v. *Butler*, 193 Mass. 96, 99, and under our early practice judgment was entered on motion during the term and the time of entry minuted, but when no day was minuted, then judgment was entered on the last day of the term on all cases ripe for judgment, and cases undetermined were continued. *Herring* v. *Polley*, 8 Mass. 113, 119. *Blanchard* v. *Ferdinand*, 132 Mass. 389. Since the abolition of terms the practice is regulated by the rules of the trial court, and a case which has been finally determined, automatically goes to judgment at the time named in the rules, even if no record is made on the docket. *Pierce* v. *Lamper*, 141 Mass. 20. *Warner* v. *Pittsfield*, 231 Mass. 138. R. L. c. 177, § 1. G. L. c. 235, § 1. But the entry of judgment, and the amount for which it shall be entered are judicial acts. The court had jurisdiction of the parties and of the procedure, and the judge could at any time before judgment order interest computed and added under the terms of the statute. *Johnson* v. *Boudry*, 116 Mass. 196. *Young* v. *Winkley*, 191 Mass. 570, 575. *Cormier* v. *Brock*, 212 Mass. 292, 295. *Bassett* v. *Fidelity & Deposit Co. of Maryland*, 184 Mass. 210 Mass. 216.

The result is that having fully examined and considered all questions raised by the record, we are of opinion that the defendants severally have failed to point out any reversible error, and in each case the exceptions should be overruled.

*So ordered.*