JOSEPH B. MOORS & another *vs.* ADOLPH LADENBURG
& others.

Suffolk.    March 28, 1905. — September 9, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Equity Jurisdiction*, To enjoin enforcement of prior attachment.

In a suit in equity, by the holders of an attachment on the goods of a certain cor-
poration, to enjoin the holders of a prior attachment on the same goods from
proceeding further with their action on the ground that their debt has been
paid, the case was referred to a master who reported in favor of the plaintiffs.
Exceptions of the defendants to the master's report were overruled by the
Superior Court, and the case was reported to this court for determination.  The
questions raised were whether the proceeds from the sale by the defendants of
certain bales of goat skins and from the sale of certain glycerine should be
credited to the corporation, and thus extinguish the debt of the corporation to
the defendants.  *Held*, that, on the facts found by the master, the defendants
did in fact credit the proceeds from the sale of the goat skins to the corporation
and could not contend that these proceeds ought not to be so credited, and that,
as to the glycerine, the question was purely one of fact whether the defendants
had obtained it under the corporation's contract with a certain firm in France or
whether they had obtained it under an independent contract of their own with
that firm, and that there was evidence to sustain the finding of the master that
the defendants obtained the glycerine under the contract with the corporation.

LATHROP, J.  This is a bill in equity filed in the Superior
Court by certain creditors of the Keen Sutterlee Company, to
restrain the defendants, who were also originally creditors of the
Keen Sutterlee Company, from prosecuting a suit brought by
the defendants in the Superior Court against the same company.
The bill is reported in full in the case of *Moors* v. *Ladenburg*,
178 Mass. 272, where it came before the court on an appeal from
a decree of the Superior Court dismissing the bill for want of
jurisdiction.  It was then held by us that the court had jurisdic-
tion.  On the case going back to the Superior Court, it was
referred to a master who filed a report, to which the defendants
filed many exceptions.

A judge of the Superior Court heard the case on the excep-
tions and entered a decree overruling the exceptions, and con-
firming the master's report; and reported the case to this

court, such decree to be entered as should be determined to be equitable.

The plaintiffs attached certain goods of the Keen Sutterlee Company subsequently to an attachment made by the defendants, and the bill proceeds upon the ground that after the bringing of the suit the defendants' claim against the Keen Sutterlee Company had been satisfied.

The defendants were bankers doing business in New York. Before the failure of the Keen Sutterlee Company, on January 10, 1896, the defendants had issued letters of credit in favor of that company, by which the company was authorized to make drafts. The defendants were entitled to have the bills of lading and other documents of title to the goods bought by the company transmitted to them, and they were to have "a specific claim or lien on all property, goods or merchandise, and the proceeds thereof which may have been paid for directly or indirectly by bills drawn under said credit."

The controversy between the parties to the present suit is whether the proceeds from two transactions, one relating to forty bales of goat skins, and the other to certain lots of glycerine should be credited to the Keen Sutterlee Company in its account with the defendants. The defendants conceded that if they should be so credited the defendants had been paid all that was due them.

The facts found by the master in regard to the goat skins may be stated as follows : On October 23, 1895, the defendants issued to the Keen Sutterlee Company a letter of credit for fifty thousand francs under the form of contract stated in the report.

On November 16, 1895, the forty bales of goat skins, with other goods bought by the Keen Sutterlee Company, were shipped at Naples for New York, and a draft representing the invoice cost of the goods, and maturing March 2, 1896, was drawn against the bill of lading pursuant to the letter of credit. The draft was accepted by the defendants' foreign correspondents.

On December 30, 1895, the skins arrived in New York. The defendants surrendered to the Keen Sutterlee Company the bill of lading, taking from the latter a receipt in which the Keen Sutterlee Company declared that it held the merchandise as the property of the defendants with liberty to sell the same as their

agent, the proceeds received to be applied to the payment of bills of exchange drawn for the purchase of the goods, the intention of the Keen Sutterlee Company being to protect and preserve unimpaired the rights of the defendants in the property and to act entirely as their agent in reference thereto. The Keen Sutterlee Company stored the goat skins in a private warehouse belonging to it, and subsequently, about January 4, 1896, in violation of the defendants' rights, indorsed to the plaintiffs for a valuable consideration a warehouse receipt covering the skins. The plaintiffs thereupon replevied the skins and undertook to bring them to Boston, but while they were in transit the defendants replevied them and as a result of the litigation regained possession of them, sold them, and credited the Keen Sutterlee Company with the proceeds on their books of account. On January 30, 1896, the defendants charged the Keen Sutterlee Company on their books with the amount of the draft. On March 2, 1896, the draft for the skins matured, and as funds to meet the same had not been furnished by the Keen Sutterlee Company, it was paid by the defendants.

The contention of the defendants is that, as under the receipt given by the Keen Sutterlee Company, the defendants had absolute title to the forty bales of goat skins, they were under no obligation to credit the Keen Sutterlee Company with the proceeds of the skins. In point of fact they did so credit them, and the master has found that this account was the only account kept by the defendants of their dealings in matters in which the Keen Sutterlee Company might be interested as of a time subsequently to its failure, and that it represented the true state of the account between the defendants and the Keen Sutterlee Company, as the defendants represented it to be; that it was in substance an account kept by the defendants to show the state of account between them and the Keen Sutterlee Company in which as of a time subsequently to its failure the Keen Sutterlee Company was interested.

We are of opinion that on the facts found by the master the defendants cannot now contend that the proceeds of the bales of skins ought not to be credited to the account of the Keen Sutterlee Company.

The facts as to the glycerine are as follows: The Keen Sut-

terlee Company before its failure had entered into a contract for the purchase of glycerine from Renault and Company, of Paris, France. At the time of the failure of the Keen Sutterlee Company this contract was in existence and binding. The defendants had previously issued letters of credit to the Keen Sutterlee Company, and had paid some of the drafts drawn thereon before the failure of the company and some after the failure. The master has found that Renault and Company, having learned of the failure of the Keen Sutterlee Company and having been notified by the defendants through the defendants' agents, Neuflize and Company, that the letters of credit were cancelled, refused to deliver the undelivered portion of the glycerine called for by the contract. A few days after the defendants had cancelled these letters of credit they became convinced that there was profit to be obtained by the delivery of all the glycerine embraced in the original contract, and a voluminous correspondence was thereupon entered into between the defendants and Neuflize and Company and Renault and Company. In substance, in this correspondence the defendants upon the one side insisted that Renault and Company were bound to deliver the balance of the glycerine and Renault and Company were at least hesitating, if not refusing, to make such delivery. The price of glycerine had risen in the market. The result of this correspondence was that these defendants finally prevailed upon Renault and Company to deliver the balance of the glycerine and this balance was received by the defendants, was paid for by them with the drafts above referred·to, was sold by them and the transaction incident to the sale and incident to their dealings with the glycerine was carried into the account already referred to in this report. There was also carried into this account in favor of the defendants the amount of the drafts which they took care of for the balance of this glycerine. The defendants paid the expenses incident to the importation of the balance of the glycerine to this country; that is, they paid the freight, insurance, cartage, duties, and custom house charges, and the master credited the defendants with such payments by carrying such payments into the debit side of the account.

The defendants' contention (and they introduced evidence tending to prove it), was that what was done by them in refer-

ence to the balance of this glycerine was done on their own account and at their own risk; that the receiver of the Keen Sutterlee Company in Pennsylvania had knowledge that they proposed to take the matter up on their own account and that the receiver not only did not assert any rights in the matter, but consented that the defendants should take up the matter of the delivery of the balance of the glycerine on their own account; that the receiver in a general way knew of the situation, but did not feel justified in taking any action relative to the glycerine contract, because he felt that such action might require an advance of money the returns from which were too speculative to justify him in making such advances; and therefore the defendants say that it was their own private transaction and that although they carried the transaction and all its details into the account, that this was merely a matter for their own convenience; that the account was a merchandise account and not a personal account, and that the Keen Sutterlee Company had and has absolutely no right to call for an accounting as to the dealings relative to the balance of this glycerine, and that, in any event, the plaintiffs have no right to have the transactions as to the balance of this glycerine carried into an account for the purpose of showing the state of the account between the defendants and the Keen Sutterlee Company.

It appeared that the balance of the glycerine was in its delivery somewhat delayed beyond the time fixed in the original contract, and it appeared in evidence that in a letter written February 4, 1896, by Neuflize and Company, they being the correspondents and agents abroad of the defendants, they said " in accordance with your reply by cable we have yesterday given Messrs. E. R. & Co. (meaning Renault & Co.) the guaranty against all action by the Keen-S. Co. which they demand and confirmed the credits most formally extending by one month their duration."

The master further found on all the evidence, that when the letters of credit issued by the defendants in favor of the Keen Sutterlee Company were cancelled, and when they (Renault and Company) learned of the failure of the Keen Sutterlee Company, they were in doubt as to what their situation was and as to what their legal obligations, duties and privileges were; that

the defendants at first and when they cancelled the letters of credit issued in this connection believed that there was no profit to be obtained in the execution of the balance of the glycerine contract; but that, within about four days from their cancellation of the letters of credit, they became convinced, in consequence of the rise in the price of glycerine, that there was substantial profit in the execution of the balance of the contract, and that at about that time they notified Renault and Company that the cancellation of the letters of credit was revoked; that they (the defendants) used all their efforts to obtain the performance of the balance of the contract by Renault and Company; that at the inception of the matter and immediately after the failure of the Keen Sutterlee Company the defendants had no settled purpose to profit personally by the execution of the balance of the glycerine contract; that their first efforts in this direction were simply to protect themselves; but that later they were inclined to believe that they were legally justified in taking to themselves the profits which might arise from the execution of the balance of the glycerine contract.

But the master further found as a fact that the defendants were at all times doubtful as to whether they could take to themselves personally the benefit of the possible profits arising from the execution of the balance of the glycerine contract, and that that doubt was evidenced by the way in which they kept their account of these transactions, meaning by that the way in which they kept the account. "To my mind" the master adds "it is inconceivable, if the defendants had felt certain and were convinced (when they obtained from Renault and Company a promise of the execution of the balance of the contract) that they (the defendants) were dealing with Renault and Company solely in their (the defendants') own rights, that they should have kept the account as it was kept," and the master found and reported as a fact that they did believe that their dealings as to the balance of the glycerine contract were dealings as to which they might have to account to the representative of the Keen Sutterlee Company or to anybody who might have a rightful claim in that respect; that they hoped especially in view of their correspondence with the receiver of the Keen Sutterlee Company and in view of his conduct in the matter, that

they would never be called to account to the representative of the Keen Sutterlee Company or to anybody who might claim under the Keen Sutterlee Company in this matter.

The master further found that the defendants were justified in believing, and they did believe, that the receiver of the Keen Sutterlee Company did not object, and in fact consented, so far as he was concerned, to the defendants' dealing with the balance of the glycerine on their own account. The receiver and assignee of the Keen Sutterlee Company has never made any claim to anything in connection with the glycerine transactions occurring subsequent to the failure of that company. And the master further found and reported as a fact so far as the matter is a question of fact, that the defendants should account in this case for the proceeds received from the execution of the balance of the glycerine contract, being credited in such account with all proper charges and disbursements suffered by them and made by them in this connection.

It seems to us that it was purely a question of fact whether the defendants obtained the glycerine under the Keen Sutterlee Company's contract or under their independent contract with Renault and Company. The master having found that they obtained it under the former contract, it follows that the defendants have been paid, and that the plaintiffs are entitled to a decree in their favor.

*So ordered.*

*R. M. Morse,* (*W. P. Everts* with him,) for the plaintiffs.
*E. N. Hill,* for the defendants.