# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

---

BRIDGET A. WALSH, administratrix *de bonis non, vs.*
CHARLES A. ADAMS & another, trustees.

SAME *vs.* ENGLISH TEA ROOMS, INC.

Suffolk.    January 8, 1923 — May 5, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, & CARROLL, JJ.

*Practice, Civil,* New trial, Exceptions, Report.    *Landlord and Tenant,* Tenant's
    liability to third person.    *Negligence,* Of one controlling real estate, In use
    of elevator.    *Elevator.*

It is discretionary with a trial judge whether a verdict shall be set aside and a
    new trial be granted on the grounds that the verdict, which was for the
    plaintiff, was against the evidence and the weight of the evidence and was
    excessive.

The lessee under a lease of an entire building, which provided that the lessee
    should make inside repairs and that he should not make nor allow to be
    made "any alterations or additions" without the consent of the lessor,
    may be found to have been negligent in using and operating an elevator
    with a gate forbidden by a regulation adopted under St. 1913, c.806, enacted
    after the beginning of the leasehold; and such lessee, quite apart from any
    liability on the part of the lessor, may be found liable for conscious suffer-
    ing and death resulting from such negligence to a third person rightfully
    upon the leased premises, although compliance with the regulation would
    have required an "alteration," and not a "repair," within the provisions of
    the lease, such use and operation being unlawful and the lessee being pre-
    sumed to know the requirements of the statute and the penalty it provided.

Where, at the trial of an action against a lessee to enforce the liability above
    described, it appeared that an elevator inspector did not post the certificate
    as to the lack of safety of·the elevator required by St. 1913, c. 806, § 4,

it was not erroneous for the trial judge to instruct the jury that such failure did " not necessarily exempt the lessee from liability for the death of the plaintiff's intestate."

Where, in an action of tort for the causing of conscious suffering and death through negligence, the jury found for the defendant, the plaintiff was not harmed by a refusal to grant a request for a ruling relating merely to the bearing of certain recited evidence upon the ascertainment of the degree of culpability of the defendant, which was the measure of damages under the count for the causing of death.

The defendant in the action above described is not absolved from liability by a parol agreement to make the alterations required, entered into and carried out by the lessor after the accident to the plaintiff's intestate.

A contention, that a report by a trial judge, which contained in its entirety the charge to the jury, showed that a certain ruling requested was not given, cannot be entertained by this court where the trial judge states in the report that the ruling was given.

An exception to the granting of a request for a material ruling predicated upon facts of which there is no evidence at the trial, where it is accompanied by instructions which seem to assume that such evidence is before the jury, must be sustained.

TWO ACTIONS OF TORT, the first against the owners and lessors, and the second against the lessee of a building numbered 204 State Street in Boston, each declaration in its first count setting forth a claim based upon the causing of the death of the plaintiff's intestate, John J. Walsh, through negligence, and in its second count a claim for damages due to his conscious suffering. Writs dated December 5, 1914.

In the Superior Court, the actions were tried together before *King*, J. Material evidence, requests for rulings, and exceptions saved by the plaintiff at the trial are described in the opinion.

In both actions, the trial judge submitted to the jury special questions, which, with the jury's answers thereto, were as follows:

" 1. Was the intestate, John J. Walsh, in any respect lacking in due care at the time of his injury? " The jury answered, " No."

" 2. Was Charles O. Martin in any respect at fault for the intestate's injury and death? " The jury answered, " No."

In answer to further special questions, the jury in the first action found that the defendants therein, the owners, were at fault for the intestate's injury and death, and that

the defendant in the second action, the lessee, was not at fault.

In the first action, the jury found for the plaintiff on the first count in the sum of $5,000 and on the second count in the sum of $3,000. In the second action the jury found for the defendant on both counts.

The defendants in the first action moved that the verdict be set aside, stating as grounds of the motion that it was " against the evidence and the weight of the evidence," that it was " contrary to law," and that it was " excessive." The motion was allowed, the judge filing the following:

" Order granting New Trial and Grounds of Order."

" Defendants' motion to set aside the verdict for the plaintiff herein and to order a new trial of this action is allowed.

" Following is a statement of the grounds of the foregoing order:

" First: The special finding of the jury, upon issues submitted, that Charles O. Martin, the fellow employee of the plaintiff's intestate, (in whose company and under whose immediate direction the intestate was at the time of his accident) was in no respect at fault for the accident, and for Walsh's death thereby, was against the clear weight of the evidence and ought not to stand. It is irreconcilable with the uncontradicted testimony of Martin himself. The effect of this special finding permeates the entire case and all the issue therein.

" It should and does invalidate and overthrow the jury's assessment of damages under the first count of the plaintiff's declaration, where damages were to be assessed according to the degree of culpability of defendants.

" The damages awarded under this count were unwarranted by the law and the evidence.

" Second: In the instruction to the jury there was misdirection of law upon one point, as I am now inclined to think, which may have affected adversely to these defendants the determination of the degree of their fault or blameworthiness, if any. This had nothing whatever to do with the jury's special finding above mentioned. But this case

was tried together with another by the same plaintiff against another defendant (English Tea Rooms, Inc.) charging the same, or a precisely similar liability for the same accident. It was for the jury to say whether either or both of these defendants were in any degree at fault for the intestate's death; and if at fault, to assess damages according to the degree of such fault.

" Under the circumstances the defendants in this case should not be compelled to prosecute their exceptions in the Supreme Judicial Court, but the verdict should be set aside and a new trial ordered.

" Third: The entire verdict, including the damages assessed under both counts, is set aside upon the first and third grounds of the defendants' motion."

The plaintiff alleged exceptions to the order.

In the second action the plaintiff moved for a new trial. The motion was denied. The plaintiff moved to vacate the order overruling her motion for a new trial in the second action, and this motion was denied. The judge then made a report as described in the opinion. The report purported to contain the entire charge to the jury.

*E. M. Shanley,* for the plaintiff.

*S. M. Child,* for the defendant Adams, submitted a brief.

*E. C. Stone & J. Gleason,* for the defendant English Tea Rooms, Inc., submitted a brief.

BRALEY, J. No final judgment having been entered the cases are properly before us on the report of the trial judge the opening paragraph of which reads, these " are two actions of tort, one against the lessee and one against the lessor of the premises No. 204 State Street, Boston, to recover for personal injuries to, and the death of the plaintiff's intestate, John J. Walsh, on November 23, 1914, by reason of his falling into an elevator well on the premises." *Strong* v. *Carver Cotton Gin Co.* 202 Mass. 209, 212. *Lee* v. *Blodget,* 214 Mass. 374. The judge further states, " I now report said case for determination by the Supreme Judicial Court, upon the stipulation of the parties that if I was wrong, as matter of law, in denying the plaintiff's motion for a new trial, or if there was any error prejudicial to plaintiff's rights

in the rulings of the court upon the plaintiff's or defendant's request for rulings, or in the admission or exclusion of evidence, or in the charge as to which an exception was saved by the plaintiff, a new trial is to be granted. Otherwise, final judgment is to be entered upon the verdict."

The verdict for the plaintiff in the first case having been, on the defendants' motion, set aside, because, among other reasons, there had been a " misdirection of law," it is first contended that the order denying the plaintiff's motions for a new trial in the second case, and " to vacate the order overruling the motion for new trial should be reversed." It was discretionary whether the motions should be granted or denied and no error of law is shown. *Lopes* v. *Connolly,* 210 Mass. 487. *Welsh* v. *Milton Water Co.* 200 Mass. 409, 411.

The jury would have been warranted in finding that one Charles O. Martin, employed as driver of a team by the Turner Centre Dairying Association for the delivery of milk at the defendant's tea rooms, having engaged the intestate on November 23, 1914, the day of the accident, " was his helper just for that morning," they drove to the back entrance of the defendant's premises, a regular customer of the association, to deliver eight cans of milk. A freight elevator ran from the street level connecting with the several floors, and while the milk was being unloaded Mrs. Hayden, an employee of the defendant, " met them and said she would go up and send the elevator down." The cans would then be put on the elevator and left by Martin at the floor or floors as she might request. The bell was rung by Martin for " the elevator to come down." What then took place is described by Martin, a witness for the plaintiff, as follows: Martin carrying four eight quart cans went in followed by the intestate Walsh with four more cans; " that as you go in the door, there is a partition on the right extending to the floor above and running right up against the door of the elevator; that the hall is right inside the door, and there is an incandescent light located about three feet from the street door; that after you walk in about six feet, you turn to the right to the elevator door; that the condition of light is such that when you turn the corner of the partition you

cannot see your hand in front of you." Martin " put down his cans and Walsh was about two feet behind him with four cans and he put these down (and was to go out and get a bottle of cream that was left on the sidewalk); that the elevator was descending when he heard a thud, as if a heavy body was falling; that he turned around and started hollering ' John,' and received no response, and began lighting matches and then he could see that there was no elevator gate there; that the elevator gate was up, and by the light of the matches he could see the outline of Walsh's body down below; that he ran around the partition, stopped the elevator from the stairway . . . went down cellar and assisted Walsh upstairs to the street." The intestate after a period of conscious suffering died as the result of his fall. It appeared that Martin who had been delivering milk to the defendant for the preceding six months gave no warning to the intestate of the proximity of the elevator well, or condition of the elevator gate, although he testified and the jury could find that prior to the accident " he had noticed on a good many mornings that the gate in question would be up; that the elevator was all right but the gate . . . would stay up unless you pulled it down." He also said that on the morning of the accident " he did not push the gate up; that he knew that the gate of the elevator was made so that you could push it up and it would stay up."

It is unnecessary to decide what contractual relations, if any, Martin or the association sustained to the intestate, or whether Martin's failure to warn him of conditions which could be found to be concealed and dangerous to life and limb was a breach of any duty he owed the intestate, or was the proximate cause of his sufferings and death. The jury's negative answer to the second question which the judge in his discretion under our practice as well as by force of statute could properly submit to them, " Was Charles O. Martin in any respect at fault for the intestate's injury and death," disposes of these inquiries which seem to have caused some perplexity and doubt at the trial. *Hart* v. *Brierley*, 189 Mass. 598, 604. *Cotter* v. *Nathan & Hurst Co.* 222 Mass. 433. St. 1913, c. 716, § 2, now G. L. c. 231, § 124.

The defendant did not contend that the intestate was unlawfully on the premises, and it was expressly conceded that the jury could find that the elevator was being used in the ordinary way for delivering the milk at the different floors. The defendant occupied the entire premises, and the lease provided that the lessee should " make all necessary and proper repairs on the inside of said building during the term of this lease," and should not make or allow to be made " any alterations or additions " without the consent of the lessor. The evidence of the plaintiff's mechanical expert, whose credibility was for the jury, showed that the elevator in question was equipped with a full automatic gate, referred to as a " Beckwith gate," operated by the action of the car. The car in ascending " carries a latch on the top that engaged notched wood, so called, on the gate. ... The action of the gate is this: the car carries a latch which engages in the notch, ... There are latches, both on the top of the car and underneath the platform, or under the bottom of the car. As the car ascends from below, the gate should be closed. ... The operation when the car is going down is exactly the reverse. ... The present " or gravity " gate has a projection on it, which engages with a double cam, or double catch, and as the car goes up, the gate is carried up with it until it reaches the top. Then it is pulled out, and the gate descends; that is, it descends by the law of gravity." The defendant must be held to have known of the mode of operation of its own elevator, as equipped with the Beckwith gate, and the jury could say as they did in answer to the first question establishing no lack of due care by the intestate, that when he was injured there was no gate on the street floor to warn him of the dangerous conditions fully described, or to protect him from falling into the elevator well, and that these conditions under the circumstances were not obvious. It also could be found that for some time prior to the accident the gate had not been working properly, and it was a question of fact on all the evidence whether the defendant knew or in the exercise of ordinary care ought to have known of, and remedied this defective and dangerous condition. *Mikkanen* v. *Safety Fund National Bank*, 222 Mass. 150. *Draper* v. *Cotting*, 231 Mass. 51.

By St. 1913, c. 806, the installation, alteration and operation of elevators was regulated. The defendant's manager testified that sometime in September, 1914, he received a notification from the building department of the city of Boston relative to alterations of the elevator, and the report of the elevator inspector on which the notification was issued was put in evidence with a copy of the " elevator regulations." These regulations in substance required that the Beckwith gate be discontinued and a gravity gate substituted. The elevator inspector testified that " According to the new law, the elevator regulations call for a six-foot slat gate, with an interlocking device on it, so that when the gate is away from the floor landing, nobody can open that gate unless the car comes down." " A gate at street opening," which was required under the modification, " means street opening or regular gate where you would walk in from the street into the elevator, or a street entrance to a freight elevator." The defendant, however, did not make the changes, nor did the inspector post any notice or prohibit the use of the elevator until it had been made safe to his satisfaction as provided in § 4. But the defendant must be presumed to have known the requirement of the statute, and that by § 12, " Any person, firm or corporation violating or failing to comply with any provision of this act, or of any regulation established hereunder shall be punished by a fine of not more than five hundred dollars for every such offence . . . ". *Welch* v. *Swasey*, 193 Mass. 364. While as between the defendant and the lessor the change in the elevator was an alteration and not a repair, and the record shows that subsequently the alteration was made and paid for by the trustees under his will, the defendant could not lawfully operate the elevator until the prescribed changes had been made. *Taylor* v. *Finnigan*, 189 Mass. 568. The judge rightly instructed the jury that the failure of the defendant to comply with the statute while not conclusive, was evidence for their consideration of its negligence, and the plaintiff's eighth and fifteenth requests were sufficiently covered by the instructions. *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580.

We now come to the plaintiff's remaining requests in so far as argued. The seventh request as modified by adding the word " necessarily " so that as given the jury were instructed that " The failure on the part of the elevator inspector to post a certificate at the entrance to said elevator or on the car does not necessarily exempt the lessee from liability for the death of the plaintiff's intestate," was not erroneous. The eighth and ninth seem to have been substantially given, while the tenth request as well as the twelfth became immaterial because of the answer of the jury that the intestate exercised ordinary care. The sixteenth request was, " The degree of culpability is to be determined according to the act of the defendants, their failure to place a gravity gate and their use of a Beckwith gate, the use of said Beckwith gate being a violation of law, a greater degree of culpability would exist on their part from said use, than if the act which caused the death of the plaintiff's intestate was not in violation of a penal statute." The degree of culpability, however, only affects the measure of damages, and a verdict for the defendant having been returned the plaintiff has not been harmed under the request as framed. The plaintiff further excepted to the giving of the defendant's second, eighth, eleventh, thirteenth, fifteenth, sixteenth and twenty-sixth requests. The second, eighth, tenth, fifteenth and twenty-sixth exceptions have not been argued, and we consider only the eleventh, thirteenth and twenty-third exceptions. The eleventh request is, " It was the duty of some one, either landlord or tenant, to comply with the elevator regulations and to supply the gravity gate called for by those regulations, and the one who had that duty is responsible to any one proximately injured by reason of such violation of such regulations, whether or not any illegal form of gate if out of order might cause such injury." It is contended by the defendant that this request was not given, but the record shows that the judge stated at the trial, and reports, that he gave the eleventh request with the insertion of the word " proximately " in the third line. We must assume under the circumstances that the record is right, and that it was given. The cases were tried together.

The plaintiff was entitled to a full and accurate statement of the law applicable to the liability of each defendant. *Nugent* v. *Boston Consolidated Gas Light Co.* 238 Mass. 221. At the date of the accident the leasehold was outstanding with the tenant in full possession and control, and the statute was enacted subsequent to the date of the lease. The tenant as we have said could not thereafter lawfully operate the elevator until the changes or alterations prescribed had been made. If at the time of the accident this had not been done the omission, the jury could find, was the proximate cause of the intestate's injuries and death, and the action could be maintained against the defendant quite apart from any alleged liability of the lessor. *Ladd* v. *New York, New Haven & Hartford Railroad,* 193 Mass. 359, 363. The instruction given was harmful error. The thirteenth request, that " No blame can attach to this defendant for the failure to provide a gravity gate if the jury believe that the landlord agreed to make the change called for by the elevator regulations and actually ordered and paid for such change," should not have been given. The parol agreement entered into after the accident to make the alterations could not absolve the defendant from the consequences of its own violation of a penal statute, or its use of an elevator so out of repair as to be unsafe. The court also subject to the plaintiff's exception gave the defendant's twenty-third request, that " where there is a lease of premises on which a nuisance exists or such a condition as plainly will lead to the creation of a nuisance and a surrender of control is made to the tenant without any express agreement touching the nuisance, then the landlord may be found to have contemplated the continuance of the illegal or dangerous condition by the tenant and may be held responsible for damages resulting therefrom." But there was no evidence on which this instruction could rest. The elevator equipped with the Beckwith gate is not even shown to have been out of repair or dangerous for use at the date of the letting. The term of ten years began November 1, 1910, and at that time as well as three years thereafter the elevator as equipped was not under the ban of the law, and no nuisance having been

maintained by the landlord, he could not be held responsible for what happened to the intestate. *Clifford* v. *Atlantic Cotton Mills,* 146 Mass. 47. *Wixon* v. *Bruce,* 187 Mass. 232. *Coman* v. *Alles,* 189 Mass. 99, 102, 103. The judge after stating, " To my mind it isn't necessary for you to determine whether you think there is any nuisance," by the use of illustrations directed the attention of the jury to what might or might not constitute a private nuisance as distinguished from a public nuisance, and then said, " a landlord doesn't warrant the premises the tenant takes. But if there be a nuisance upon the premises which are let, the landlord may and should take into account the natural and probable use to be made of the premises. ... I don't know that I can help you more than that. If you should say that the fact that the elevator gate was not in accordance with the law and yet it was leased with the idea of being used, then you might say that the landowner was liable for that which he might fairly and naturally expect as a result of occupation." It would seem plain that this instruction merely emphasized and impressed upon the jury the error to which we have just referred. The exceptions to the instructions in so far as not covered by what has been said, and to the rulings on evidence need not be reviewed, as those questions if raised at the new trial are likely in view of this opinion to assume an entirely different aspect, rendering their discussion at this time of no substantial value. In accordance with the terms of the report, no error of law appears in the allowance of the defendants' motion to set aside the verdict in the first case, but in the second case the exceptions must be sustained and a new trial granted.

*So ordered.*